809 A.2d 325

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Kenneth FORD, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 17, 2000.

Decided Oct. 25, 2002.

380

James Milton Anderson, Billy Horatio Nolas, Philadelphia, for appellant Kenneth Ford.

Catherine Marshall, Philadelphia, for appellee, Com. of PA.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice NIGRO.

Appellant Kenneth Ford appeals from the order of the Philadelphia County Court of Common Pleas denying his petition for relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541 *et seq.* We agree with Appellant that he is entitled to a new penalty phase hearing and therefore, we reverse.

On July 31, 1989, Celeste Sharpe and Renee Mitchell were found stabbed to death in the rear room of a candy store owned by Ms. Sharpe. Ms. Sharpe's bra had been ripped off and her skirt was pulled up above her waist. Ms. Mitchell was also found naked from the waist down, with her underwear ripped from her body. In the store, the cash register drawer was open and loose change was strewn on the floor. While the police were investigating the scene of the crime, Appellant approached the police, identified himself as Kenneth Jones, and stated that he knew who killed the two victims. Initially, he told an officer that he was in Ms. Sharpe's store and witnessed the murders. Shortly thereafter, he changed his story and told the officer that he watched the murders from across the street. Appellant then requested that a detective accompany him down an isolated street where the two talked. At this time, Appellant appeared to become

agitated about the deaths of the two victims and the detective attempted to calm him down by patting him near the waist. When the detective put his hand on Appellant, he felt a hard object. He reached under Appellant's clothing and removed a ten-inch Bowie knife from his waistband. Appellant pulled up his sweater to wipe his forehead and revealed a blood stain on his T-shirt. The detective then asked Appellant to go to the police station to further explain to the police what he saw. Appellant acquiesced and stated that he would do anything to help catch the people who killed the two women. At the police station, Appellant was handcuffed to a chair and interviewed by another detective. This detective saw blood on the zipper area of Appellant's pants and on his sweater. He asked Appellant to remove his clothing. When Appellant took off his two bloodstained shirts, he revealed a cut on his chest. Appellant also removed his pants and swim trunks, both of which had blood stains on them. After Appellant was given his Miranda warnings, he claimed to have been playing "craps" during the murders and that he had won a large amount of money doing so. He also claimed that he had received the chest abrasion during a fight with two men and that an unidentified man had given him the Bowie knife. Appellant's fingerprints, his knife and a victim's blood type subsequently linked Appellant to the killings. Appellant was arrested and charged with murder and related offenses.

Following a jury trial, Appellant was found guilty of two counts of murder of the first degree, two counts of burglary, and one count each of robbery and possession of an instrument of crime. After a sentencing hearing, the jury found two aggravating circumstances [1] and no mitigating circumstances and accordingly, sentenced Appellant to death. On March 9, 1992, the trial court formally imposed the sentence of death on each of the two murder convictions.[2] On April 3, 1992,

1. The two aggravating circumstances were that the murders occurred during the commission of another felony and were committed by means of torture.

2. Appellant was also sentenced to two concurrent sentences of 104 to 240 months imprisonment on the two burglary convictions, a consecutive sentence of ten to twenty years imprisonment on the robbery

Appellant filed a direct appeal to this Court and new counsel was appointed to represent Appellant on his appeal. On November 22, 1994, this Court affirmed Appellant's judgment of sentence. *See Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433 (1994).

Appellant filed a pro se PCRA petition on July 23, 1996. New counsel was appointed to represent Appellant and on April 7, 1997, an Amended Petition alleging the availability of after-discovered exculpatory evidence and ineffective assistance of appellate counsel was filed. On July 9, 1997, the Commonwealth filed a motion to dismiss Appellant's Amended Petition. The following day, Appellant, represented by Mr. Lee and Billy Nolas of the Center for Legal Education, Advocacy and Defense Assistance (CLEADA), filed a Supplemental Petition and on September 8, 1997, filed a Supplemental Petition for Habeas Corpus Relief and for Statutory Post–Conviction Relief Under the Post–Conviction Relief Act. Following an evidentiary hearing, the PCRA court denied Appellant any relief. Appellant then filed the instant appeal.

Appellant raises numerous issues in his brief to this Court. The Commonwealth argues, however, that many of Appellant's claims have either been waived or previously litigated. We agree.

To be eligible for relief under the PCRA, a petitioner must establish that his allegations have not been previously litigated or waived. *See* 42 Pa.C.S. § 9543(a)(3). An issue is deemed finally litigated for purposes of the PCRA if the "highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2). If the allegations of error have not been previously litigated, a petitioner must also demonstrate that those allegations have not been waived. An allegation is deemed waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b).

conviction, and a consecutive sentence of one to five years imprisonment on the possession of an instrument of crime conviction.

■    Here, Appellant claims that the prosecutor engaged in misconduct by: stating during closing arguments that if the walls and the floor could talk, they would tell the jury that Appellant committed the crime; withholding Commonwealth witness Dennis Sims Africa's identity until the day before he testified; and attempting to amend the aggravating circumstances during trial.  He also claims that District Attorney Lynne Abraham's prosecution of his PCRA case, when she had been the trial judge who presided over his trial, violated his due process rights and that there was insufficient evidence to support his burglary convictions.  These claims were all raised and disposed of on Appellant's direct appeal to this Court, *see Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433, 436–442 (1994), and have therefore been previously litigated for purposes of the PCRA.[3]  Accordingly, these claims are not reviewable.  *See* 42 Pa.C.S. § 9543(a)(3).

■    Appellant also raises a number of claims of trial court and constitutional error and claims of prosecutorial misconduct that have been waived.  Specifically, Appellant contends that the prosecutor engaged in misconduct by: soliciting highly prejudicial comments from Commonwealth witness Daisy Fisher;  attempting to deceive the jury as to whether Commonwealth witness Paulette Riddick had an arrangement with the prosecution;  improperly alluding to Appellant's criminal record by soliciting testimony that brought out the fact that Appellant's fingerprints were already on file with the police prior to his arrest for the murders;  improperly vouching for the credibility of one of the detectives who worked on the case;  telling the jury that there was additional

---

3.  Appellant's attempt to frame these previously litigated issues as claims of prior counsel's ineffectiveness does not make these claims cognizable under the PCRA. This Court has held that a petitioner cannot obtain post-conviction review of claims previously litigated on appeal by alleging ineffective assistance of prior counsel and presenting new theories of relief to support previously litigated claims. *See Commonwealth v. Porter*, 556 Pa. 301, 728 A.2d, 890, 896 (1999); *see also Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 703 (1998) (issue remains previously litigated within meaning of PCRA despite appellant's assertion that counsel's ineffectiveness caused claim to fail on direct appeal).

evidence that the Commonwealth had not brought forth; and knowingly presenting perjured testimony to the jury. He also claims that the perjury of Commonwealth witness Dennis Sims Africa constitutes after-discovered evidence that entitles him to relief; that his right to confront witnesses was violated by the trial court's restrictions on cross-examination; that his conviction and death sentence were the products of racial discrimination; that the trial court's instructions on mitigating evidence were unconstitutional; that his rights were violated by Mr. Justice Castille's failure to recuse himself from hearing Appellant's direct appeal to this Court; that the trial court erred in failing to advise the jury regarding the meaning of a life sentence under *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); that the trial court's instructions on impeachment and the specific intent necessary for first-degree murder were misleading; that the trial court erred in allowing various witnesses to speculate about a sexual assault when the forensic evidence did not support such speculation; that his due process rights were violated when the Commonwealth was allowed to have unqualified experts testify concerning sexual assault; that the trial court erred in permitting the medical examiner's testimony that the victims were defending against a sexual assault when there was no scientific basis for this testimony; that the trial court erred when it death qualified every member of the jury, but failed to life qualify them; that the execution of an innocent man would violate the constitution; and that the trial court's burglary instruction was flawed and thus constituted an unconstitutional ex post facto broadening of the burglary statute. Appellant could have raised each of these claims of trial error in his direct appeal to this Court but failed to do so. Accordingly, these claims are waived under the PCRA and therefore, can offer Appellant no basis for relief.[4]

**4.** At some point during the arguments relating to each of these waived claims of straight trial error, Appellant tacks on a bald sentence that trial and appellate counsel were ineffective for failing to raise and/or properly litigate the underlying claims of error. Then, at the end of the discussion section of his brief, Appellant adds a one paragraph summation that each of these "ineffectiveness claims" were of arguable merit, that counsels' failures had no reasonable strategic bases, and that the

█ Appellant does, however, raise two claims of ineffective assistance of counsel at his penalty phase that are properly developed in accordance with the standard governing such claims. Consequently, these claims are reviewable.[5]

█ Appellant essentially argues that trial counsel was ineffective for failing to investigate and present sufficient evidence of mitigation, including evidence of Appellant's history of abuse and his mental illness and dysfunction, at the penalty phase pursuant to 42 Pa.C.S. § 9711(e),[6] and that

errors all established prejudice. This Court has previously held that a petitioner can avoid a finding of waiver under the PCRA by making a proper claim of ineffective assistance of counsel at his first available opportunity to do so. *Commonwealth v. Wallace*, 555 Pa. 397, 724 A.2d 916, 921 (1999). However, an undeveloped argument such as the one presented by Appellant, which fails to meaningfully apply the standard governing the review of ineffectiveness claims at any point, simply does not satisfy Appellant's burden of establishing that he is entitled to any relief. *See Commonwealth v. Bracey*, 787 A.2d 344, 350 n. 4 (Pa.2001). We could not, however, reach this same conclusion had Appellant framed the instant claims as ones of ineffectiveness, applied and discussed the tripartite ineffectiveness standard at least as it related to trial counsel's performance, and provided a properly-layered assertion that prior counsel were ineffective for failing to raise trial counsel's ineffectiveness. Only then, contrary to what Justice Newman suggests in her concurring opinion, would these claims warrant merit review under this Court's precedent. *See id.* at 351–57 (reviewing numerous claims where appellant addressed each prong of the ineffectiveness standard as it related to trial counsel and at least included a properly-layered assertion that all prior counsel were ineffective for failing to raise trial counsel's ineffectiveness); *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 525–26 (2001) (addressing level of advocacy required regarding appellate counsel's ineffectiveness once properly-developed claim of trial counsel's ineffectiveness has been made); *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000).

5. As noted above, a petitioner can avoid a finding of waiver under the PCRA by making a proper claim of ineffective assistance of counsel at his first available opportunity to do so. *Commonwealth v. Wallace*, 724 A.2d at 921. Here, the PCRA petition marked the first opportunity Appellant had to challenge appellate counsel's failure to assert claims of trial counsel's ineffectiveness and therefore, Appellant's properly-layered claims of prior counsel's ineffectiveness are not waived.

6. Section 9711(e) of the Death Penalty Statute permits the introduction of the following mitigating evidence at the penalty phase:
(1) The defendant has no significant history of prior criminal convictions.
(2) The defendant was under the influence of extreme mental or emotional disturbance.

appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this regard. We agree.

■ To prevail on an ineffectiveness claim under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e., that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. *See Commonwealth v. Kimball,* 555 Pa. 299, 724 A.2d 326, 333 (1999).

During Appellant's penalty phase in the instant case, trial counsel presented virtually no evidence of mitigating circumstances. Although counsel called Appellant's sister, Valerie Monroe, to testify during the penalty phase, he did so without preparing her as a witness. Once on the stand, Ms. Monroe stated little more than "if you all would give my brother a life long sentence it would change his mind about the errors that he made in his life and for him to do much better." N.T., 2/11/1991, at 2653. The only other mitigation evidence offered by counsel at the penalty phase was evidence regarding Appellant's low I.Q. and evidence that Appellant's educational achievement is approximately at the second to third grade level.

At the PCRA hearing, trial counsel testified that the only mitigation evidence he reviewed prior to the penalty phase

(3) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired.

(4) The age of the defendant at the time of the crime.

(5) The defendant acted under extreme duress, although not such duress as to constitute a defense to prosecution under 18 Pa.C.S. § 309 (relating to duress), or acted under the substantial domination of another person.

(6) The victim was a participant in the defendant's homicidal conduct or consented to the homicidal acts.

(7) The defendant's participation in the homicidal act was relatively minor.

(8) Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.

42 Pa.C.S. § 9711(e).

388

was a report prepared by Dr. Melvin Heller, a psychiatrist, regarding Appellant's competency to stand trial. Although the report ultimately concluded that Appellant was competent, it also clearly revealed that Appellant had a troubled childhood and learning problems.[7] Despite the information contained in Dr. Heller's report, trial counsel made no attempt to obtain any records of Appellant's prior medical hospitalizations, any mental health records or any high school records. He did not solicit information concerning Appellant's life history from Appellant or his family members, nor did trial counsel have a mental health professional evaluate Appellant regarding the potential applicability of mitigating evidence.

Given these circumstances, the PCRA court found, and we agree, that Appellant's claim has arguable merit. It is clear that although trial counsel was reasonably made aware that Appellant had a history of abuse, mental illness and dysfunction, he failed to pursue or develop any of this mitigating evidence. See *Commonwealth v. Smith*, 544 Pa. 219, 675 A.2d 1221, 1234 (1996) ("where counsel is informed that his client has suffered some mental problems that may provide evidence of mitigation in the penalty phase, counsel is ineffective if he fails to pursue such evidence").

We also agree with the PCRA court that trial counsel had no reasonable basis for failing to present this mitigating evidence. At the PCRA hearing, trial counsel testified that his failure to investigate Appellant's life history, school records, medical records or mental health records was not a strategic decision. N.T., 2/23/98, at 42–44. Trial counsel also

7. Dr. Heller's report stated:

Without psychosis. [Appellant] presents with a background history of troubled childhood in a one-parent impoverished home, followed by the sudden, traumatic loss of his mother in a vehicular accident when he was approximately 12, and unhappy placement in a foster home in which he states that he was abused by alcoholic foster parents. This was coupled with a long standing learning disorder requiring special classes and his development is marked by socioeconomic, cultural and emotional deprivation. This has resulted in Depressive Personality Disorder DPD manifested by poor self image, repeated episodes of self defeating behavior, and underlying feelings of inadequacy.

Heller Report at 3.

testified that his failure to have Appellant evaluated by a mental health professional was not a strategic decision. *Id.* at 45. When questioned about his preparation of mitigating evidence, trial counsel stated:

[Mitigation investigation] is a blind spot in my practice. It is a blind spot that exists even today. I do not do what should be done for mitigation. I still have constant arguments with my partner to go out there and get mitigation evidence, and I'm getting better, and I am working on it now, because she is forcing me to, but I didn't have her when this case was tried, and I simply did not look for it. I was too enamored with the results that I could get from shooting from the hip to believe that I had to do any more searching than what I thought I could do standing before a jury, and that's why I honestly dropped the ball.

N.T., 3/13/1998, at 59.

In light of this testimony, it is clear that trial counsel had no reasonable basis for failing to investigate and present mitigation concerning Appellant's history of abuse, mental illness and dysfunction. *See Kimball,* 724 A.2d at 333.[8]

█ Finally, we must determine whether Appellant was prejudiced by trial counsel's failure to present mitigating evidence. To show prejudice in the penalty phase of a death

8. Appellant's trial counsel testified that, prior to trial, he spoke with the prosecutor who indicated that he would provide trial counsel with Appellant's mental health reports from the parole department, which, according to the prosecutor, contained evidence that Appellant was explosive. Based on this conversation and without actually reviewing the parole board files, trial counsel declined the prosecutor's offer and decided not to introduce any psychiatric records during the penalty phase given his concern that the reports might have opened the door to the admission of Appellant's prior record. Trial counsel eventually did review the parole board records, but not until the lunch recess just before he was to present Appellant's evidence of mitigation. Thus, although counsel did offer a reason for not presenting Appellant's psychiatric records, this decision was based on very limited information and without actually reviewing the supporting documents. Counsel never explained his failure to pursue or present other evidence of mitigation and indeed, admitted that if he "would have done the job right, and had all of this [mitigation] evidence, [he] certainly would have presented it all [including the psychiatric records]." N.T., 2/23/98, at 54.

penalty case, an appellant must show the reasonable probability that, absent trial counsel's failure to present mitigating evidence, he would have been able to prove at least one mitigating circumstance by a preponderance of the evidence and that at least one jury member would have concluded that the mitigating circumstance(s) outweighed the aggravating circumstance(s).[9]

In the instant case, the PCRA court summarized the evidence of mitigation put forth by Appellant during the PCRA hearing as follows:

[Appellant] was the middle of five (5) children who shared the same alcoholic mother but four (4) different fathers. His mother would leave the house for days at a time leaving the children to fend for themselves, to scrounge or steal food. Oftentimes after drinking, [Appellant's] mother beat him with an extension cord, threw him against a wall, punched and kicked him. Once a naked [Appellant] was tied to a bed with rope and his mother beat him with an ironing cord. One day when [Appellant] was six (6) or seven (7) years old he ran away after being warned his mother was coming up the stairs to give him a beating. When the police returned [Appellant] to his mother, she threatened to kill him and placed him in foster care. While he was eleven (11) and in an abusive foster care home, [Appellant's] mother was killed in a car accident; at the age of twelve (12) he ran away and went to live with his maternal grandparents. After a short time, [Appellant's]

9. 42 Pa.C.S. § 9711(c) provides, in pertinent part:
(c) Instructions to jury.—
(1) Before the jury retires to consider the sentencing verdict, the court shall instruct the jury on the following matters:
. . .
(iii) aggravating circumstances must be proved by the Commonwealth beyond a reasonable doubt; mitigating circumstances must be proved by the defendant by a preponderance of the evidence.
(iv) the verdict must be a sentence of death if the jury unanimously finds at least one aggravating circumstance ... and no mitigating circumstance or if the jury unanimously finds one or more aggravating circumstances which outweigh any mitigating circumstances. The verdict must be a sentence of life imprisonment in all other cases.
42 Pa.C.S. § 9711(c)(1)(iii)

grandmother started the same abusive behavior, beating him with a cord and her fists. When [Appellant's] Uncle Cornell tried to sexually assault one of [Appellant's] sisters, [Appellant] intervened and received a savage beating. On three occasions, [Appellant] jumped from a third story window to escape another beating by Uncle Cornell who was intoxicated and who had threatened to carve his initials in [Appellant's] face. During his teen years, [Appellant] often lived on the street, sleeping in cars.

From his formative years, [Appellant] had also been repeatedly sexually abused although the physical abuse and neglect were, from a psychiatric point of view, deemed more extreme and clinically significant. From his teenage years, [Appellant] also suffered from recurrent major depression with psychotic features including psychotic experiences, paranoia and auditory hallucinations. [Appellant] also suffers from rejection sensitivity, schizophrenia, brain impairments including mental retardation, learning disabilities and post traumatic stress, which, according to Dr. Julie Beth Kessel, a defense psychiatrist, makes him a "grossly impaired person."

According to Dr. Kessel [Appellant] showed signs of dementia early in life as he lived as a homeless street person. These factors coupled with his other extreme deficits leads to a conclusion that [Appellant] is "badly damaged." There is a long history of psychiatric treatment and high dosages of medication with several suicide attempts and impaired reality, including hearing voices and alcohol dependence. It was Dr. Kessel's conclusion that at the time of these savage murders, [Appellant] suffered (1) "from an extreme emotional disturbance," (2) "from a substantially impaired capacity to appreciate the criminality of his conduct" and (3) "from a substantially impaired capacity to conform his conduct to the requirements of law."

*Commonwealth v. Ford*, Nos. 3222 to 3231, slip op. at 15–17 (C.P. Phil. Oct. 30, 1998).

In light of these facts, the PCRA court found that trial counsel's failure to present this evidence deprived the trier of

fact of mitigating evidence and that there was a reasonable possibility that the jury would have found at least one statutory mitigating circumstance by a preponderance of the evidence. The PCRA court, however, went on to conclude that there was no reasonable probability that the outcome of the penalty phase deliberations would have differed. The PCRA court noted that although Appellant's mitigating evidence was extensive, it was "severely compromised by the quality of defendant's prior bad acts and the effective cross-examination of [Appellant's] experts." *See id.* at 18. In support of this conclusion, the PCRA court pointed to the Commonwealth's rebuttal evidence that Appellant had previously been convicted of the sexual assault of a twelve year-old boy, that he had been a gang member in his youth, and that he had threatened to kill his grandparents and set their house on fire. In addition, the court noted that the Commonwealth would have presented psychiatric evaluations of Appellant concluding that he had an anti-social personality disorder and that he was aggressive, explosive, and impulsive. The PCRA court also noted that the Commonwealth would have presented the opinion of a clinical psychologist that Appellant does not suffer from organic brain damage and that he is not learning disabled.

Although this rebuttal evidence is substantial, we simply cannot agree with the PCRA court's conclusion that trial counsel's admitted failure to pursue and present mitigating evidence did not prejudice Appellant. It is the duty of the jury to consider all evidence—evidence of aggravating circumstances, evidence of mitigating circumstances as well as rebuttal evidence—in deciding whether or not a defendant should receive the sentence of death. Yet, the jury in the instant case was, in effect, given no meaningful evidence of mitigation to consider in their weighing process even though, as the PCRA court noted, extensive evidence was available. Even without such evidence, however, the record shows that the jury was deadlocked at one point during their penalty phase deliberations. Given these circumstances, we cannot agree that there is no reasonable probability that the outcome of the penalty phase deliberations would have been different had

counsel presented evidence of mitigation, including evidence of Appellant's history of abuse, mental illness and dysfunction. We therefore agree with Appellant that trial counsel was ineffective for failing to present such evidence and that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness in this regard. Accordingly, we reverse the order of the PCRA court denying relief and remand the matter to the trial court for a new sentencing hearing.[10]

Justice NEWMAN files a concurring opinion in which Justice SAYLOR joins.

Justice SAYLOR files a concurring opinion.

10. We note that Appellant raises another properly-layered claim of ineffectiveness, wherein he argues that previous counsel was ineffective for failing to assert trial counsel's ineffectiveness for failing to submit any proof in support of Appellant's claim that the court crier improperly interfered with jury deliberations. Specifically, Appellant claims that after four hours of deliberations, the jury foreman told the crier that the jury was deadlocked. Appellant then claims that, without notifying the trial judge of what had transpired, the court crier told the foreman that the jury had not deliberated long enough and that they should resume deliberations. Appellant raised this claim at post-verdict motions and was ordered by the trial court to offer proof of these allegations. Trial counsel, however, never offered such proof. Given Appellant's failure to offer proof supporting his claim, this Court found on direct appeal that Appellant had waived the claim. *Commonwealth v. Ford*, 539 Pa. 85, 650 A.2d 433, 440 (1994). We went on, however, to state that:

[i]f the claim had not been waived and assuming the substance of appellant's claim is true, then such communication by a court crier would be viewed as error that is not harmless. It is highly improper for a court crier to fail to inform the trial judge of a deadlock and, thereafter, to usurp the function of the judge by directing the jury to continue its deliberations after being informed that it is deadlocked. The danger that arises by bypassing the trial judge is that the verdict could be the product of judicial coercion.

*Id.*

Appellant has now provided affidavits from four members of his penalty phase jury which support his claim. Although the Commonwealth argues that this issue has been previously litigated, Appellant notes that this Court never actually reached the *merits* of the issue in the direct appeal. Without deciding whether the issue was actually previously litigated or not, we merely reassert, now that Appellant has provided evidence in support of his claim, this Court's conclusion that reversible error occurs when a court crier independently tells the jury to resume penalty phase deliberations.

Justice CAPPY concurs in the result.

Justice CASTILLE and Justice EAKIN file dissenting opinions.

Justice NEWMAN concurring.

I agree with the Majority's disposition of this matter. I write separately to set forth my understanding of what our Court requires in layered ineffective assistance of counsel claims.

To the extent that a petitioner raises properly layered claims of ineffective assistance of counsel that were not previously litigated, the petitioner is entitled to review of those claims. *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 302(Pa.), *cert. denied*, 528 U.S. 975, 120 S.Ct. 422, 145 L.Ed.2d 330 (1999). Also, I agree with the Majority that several of the claims that Kenneth Ford (Appellant) presents to us had been previously litigated and, therefore, such claims are not cognizable under the PCRA. *See* Majority Op. at 328–29; 42 Pa.C.S. §§ 9543(a)(3) & 9544(a). As noted by the Majority, recasting these previously litigated claims as ones of ineffective assistance of counsel does not revive the claims and make them reviewable. Majority Op. at 329 n. 3; *see also Commonwealth v. Chester*, 557 Pa. 358, 733 A.2d 1242, 1251 (1999).

As for his remaining issues, Appellant raises claims of trial court error, violations of constitutional rights, prosecutorial misconduct, and ineffective assistance of trial counsel.[1] Because all of these claims could have been raised on direct appeal, they are waived. 42 Pa.C.S. §§ 9543(a)(3) & 9544(b); *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 212 (2001). Appellant asserts during the discussion of each of the above-mentioned issues that all prior counsel acted ineffectively by failing to raise the claims. Appellant also includes a paragraph on page ninety-five of his brief, which states:

1. New counsel represented appellant on direct appeal. Appellant had the opportunity to challenge the effectiveness of trial counsel, and was obligated to do so, with the assistance of his new attorney on direct appeal. *See Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (1998).

All prior counsels' failure to properly investigate and present each and all of the issues presented in Appellant's PCRA proceedings and in this appeal were ineffective. Each of these claims is of arguable merit; counsel's failures had no reasonable strategic basis; and the errors, individually and collectively, undermined the confidence in the outcome of the trial and sentencing, establishing prejudice. Appellant is entitled to a new trial. *Commonwealth v. Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

(Appellant's Brief at p. 95). Appellant's boilerplate tag lines and paragraph [2] raise separate and cognizable claims of ineffective assistance of appellate counsel for each issue addressed in the brief. I disagree with the conclusion of the Majority that these ineffectiveness claims are waived. *See* Majority Op. at p. 328. After much reflection upon, and study of, our precedent in this area, I believe that Appellant, through tag lines and boilerplate language, has sufficiently presented all of these claims for our review, despite framing some as trial court error, constitutional violations, prosecutorial misconduct, and trial counsel ineffectiveness. *See Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292 (2001) (reviewing merits of claims of ineffectiveness of PCRA counsel for failing to raise prior counsel's ineffectiveness); *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 525 (2001) ("a majority of this Court

---

**2.** I use "tag line" and "boilerplate" to refer to the one or two sentence allegations of the ineffectiveness of counsel that Appellant repeats at the end of each of his claims for relief. Following most of his discussions of trial court error, prosecutorial misconduct, constitutional error, or trial counsel ineffectiveness, Appellant tacks on one sentence, which states that prior counsel was ineffective for failing to litigate his claim. In most cases, this is the only argument regarding ineffectiveness that Appellant makes for these claims. Appellant makes no attempt to discuss the application of the three-prong test for ineffectiveness, *see, e.g., Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999), or deal with the particular facts of these claims. In addition to his first two claims of error in which he sets forth a detailed discussion of the ineffectiveness of trial counsel, the greater part of Appellant's argument regarding the ineffectiveness of trial and appellate counsel is contained in a paragraph on page ninety-five of his brief. *See* Concurring Opinion, Newman, J., at 335.

would presently continue to allow a degree of latitude" in developing layered ineffective assistance of counsel claims in briefs); *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 598 n. 3 (2000) (noting that "these ineffectiveness claims are properly layered because appellant argues that all of his prior counsel were ineffective for failing to assert the claims of trial court error"); *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202, 204 n. 1 (2000) (claims of trial counsel ineffectiveness accompanied by claims of appellate counsel ineffectiveness for failing to raise trial counsel ineffectiveness claims are "properly layered"); *but see Commonwealth v. Bracey*, 568 Pa. 264, 795 A.2d 935, 939–40 (2001) (claims of trial court error, constitutional error, and prosecutorial misconduct are waived despite being accompanied by tag line asserting ineffectiveness of prior counsel for failing to raise such claims); *Commonwealth v. Abdul–Salaam*, 808 A.2d 558, 560 (Pa.2001) (same). While I disagree with the Majority that these claims are waived, I join in the disposition of the Majority of these issues because I believe that Appellant is not entitled to relief for these claims.[3]

Finally, I agree with the Majority that appellate counsel acted ineffectively by neglecting to raise trial counsel's ineffectiveness for failing to investigate and present evidence during the penalty phase of Appellant's history of abuse and mental illness. Appellant discusses this claim in his brief as one of trial counsel ineffectiveness and argues all three prongs of our ineffectiveness standard. (Appellant's Brief at pp. 8–40). Then, as he did with the other above-referenced issues, Appellant asserts that appellate counsel acted ineffectively in failing to raise this matter on direct appeal. As I understand our precedent in this matter, Appellant's presentation of this claim was sufficient to garner our review, *see Commonwealth v. Meadows*, 567 Pa. 344, 787 A.2d 312 (2001) (reviewing merits

**3.** My conclusion that Appellant is not entitled to relief on his claims of ineffective assistance of counsel does not extend to two of the claims; namely, that prior counsel acted ineffectively by failing to investigate and present evidence during the penalty phase of Appellant's history of abuse and mental illness and for neglecting to submit any proof in support of Appellant's claim that the court crier improperly interfered with jury deliberations.

of underlying claims of trial counsel ineffectiveness in layered ineffective assistance of counsel claims); *Bracey*, 795 A.2d at 941–49 (same); *Marrero*, 748 A.2d at 204 (same), and the post-conviction record in this case supports the award of relief. *See generally Williams*, 782 A.2d at 525 n. 5 (noting "a primary avenue of proving appellate counsel's lack of steward-ship frequently lies in establishing the strength and obvious-ness of the underlying claim" of trial counsel ineffectiveness). Therefore, I join the Majority in reversing the PCRA court and remanding for a new penalty phase hearing.

Justice SAYLOR joins in this concurring opinion.

Justice SAYLOR concurring.

I join Madame Justice Newman's concurring opinion in this matter.

I also write separately to address the dissent's position regarding the Court's recent capital PCRA jurisprudence involving the importance of properly pleading, proving, and briefing layered claims of ineffective assistance where the defendant was represented by new counsel on direct appeal. In this regard, the dissent maintains that Appellant's claims are procedurally barred, as he failed to adequately plead, prove, and brief a layered claim of ineffectiveness, particular-ly, that associated with representation of direct appeal coun-sel. *See* Dissenting Opinion, at 343–44.

At the time Appellant filed and litigated his petition in the post-conviction court, this Court had in effect its policy of relaxed waiver, which was then applied not only on direct appeal, but also in the post-conviction context. Indeed, the PCRA court relied upon such doctrine in addressing Appel-lant's claims. As the dissent acknowledges, relaxed waiver permitted review of the underlying allegation on its merits, without the necessity of establishing ineffectiveness. *Accord Commonwealth v. Nelson*, 514 Pa. 262, 277, 523 A.2d 728, 736 (1987). Consequently, Appellant's focus in both his PCRA petition and at the PCRA hearing upon the failure of trial counsel to present available mitigation evidence in the penalty

phase was consistent with the then existing relaxed waiver rule.

In *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), the Court eliminated relaxed waiver in the post-conviction context, *see id.* at 45, 720 A.2d at 700, and subsequently, determined that such change was to be implemented retroactively as a mere clarification to the applicable review paradigm. *See Commonwealth v. Pursell,* 555 Pa. 233, 252–53, 724 A.2d 293, 303 (1999).

I joined in the Court's elimination of relaxed waiver, and in directing the retroactive effect of this change, for a number of reasons, foremost among which were the substantial tension between relaxed waiver and amendments to the legislative scheme for post-conviction relief,[1] and what I saw as continuing abuses of the relaxed waiver doctrine.[2] Nevertheless, I acknowledge that the doctrine had, in fact, been made broadly available by the Court, more broadly than I believe was originally intended, and therefore, post-conviction petitioners operating under the then-prevailing rules, such as Appellant, were justified in invoking the doctrine in styling and litigating their claims for relief. It is unjust, in my view, to penalize them for failing to frame and pursue their claims according to a far more stringent set of rules subsequently implemented by the Court.

Thus, upon reflection, I am now of the view that the abolition of relaxed waiver should have been applied prospectively, and that its retroactive elimination has contributed to

1. The PCRA contains a specific set of waiver precepts, which the General Assembly has enhanced through the amendatory process. *See* 42 Pa.C.S. §§ 9543(a)(3), 9544(b).

2. Relaxed waiver was utilized by petitioners to justify the assertion of new claims on an *ad hoc* basis throughout the post-conviction process, up to and including reply briefs in post-conviction appeals. Particularly where the effort was directed, not to the raising of a single, compelling basis for relief arising out of the existing record, but rather, to inundating the Court with dozens of additional non-record-based claims outside the framework designed for orderly review of such claims, I saw this effort as inconsistent with the intent and design of the relaxed waiver doctrine as first articulated in *Commonwealth v. McKenna*, 476 Pa. 428, 441, 383 A.2d 174, 181 (1978).

the Court's present difficulty in achieving a consensus concerning the appropriate principles to be applied in its absence, as reflected in the number of divided opinions in this area. *See, e.g., Commonwealth v. Lambert,* 568 Pa. 346, 797 A.2d 232 (2002) (opinion announcing the judgment of the court); *Commonwealth v. Bracy,* 568 Pa. 264, 795 A.2d 935 (2002); *Commonwealth v. Gorby,* 567 Pa. 370, 787 A.2d 367 (2001) (opinion announcing the judgment of the court); *Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312 (2001) (plurality opinion); *Commonwealth v. Simmons,* 569 Pa. 405, 804 A.2d 625 (2001) (opinion announcing the judgment of the court); *Commonwealth v. Rivers,* 567 Pa. 239, 786 A.2d 923 (2001) (opinion announcing the judgment of the court). It now appears to me that, by retroactively eliminating relaxed waiver and now imposing upon post-conviction petitioners the requirement to plead and prove entitlement to relief through a layered ineffectiveness standard, the Court has not simply clarified the standard of review, but rather, has altered the standard of proof. Notably, the federal courts have declined to treat the retroactive elimination of relaxed waiver as a procedural bar to federal habeas corpus relief. *See, e.g., Pursell v. Horn,* 187 F.Supp.2d 260, 296–97 (W.D.Pa.2002); *Bronshtein v. Horn,* 2001 WL 767593, \*7–8 n. 17 (E.D.Pa.2001) (describing the abolition of relaxed waiver in capital PCRA cases as a "sea change"). This position seems particularly appropriate as applied to those petitioners, such as Appellant, who no longer had the opportunity to amend their pleadings and offer evidence as of the time relaxed waiver was abolished. *Accord Walker v. Attorney General,* 167 F.3d 1339, 1345 (10th Cir. 1999) ("A defendant cannot be expected to comply with a procedural rule that does not exist at the time, and should not be deprived of a claim for failing to comply with a rule that only comes into being after the time for compliance has passed." (citations omitted)).

In summary and in retrospect, I believe that the Court's effort to align its jurisprudence with the terms of the PCRA and to curb the abuses to the relaxed waiver doctrine should have been accomplished prospectively, thereby allowing pend-

ing cases to be reviewed in accordance with the standards governing the presentation of claims prevailing at the time when the claims were presented. Left to my own devices, I would take this opportunity to correct our jurisprudence in this regard.

Justice CASTILLE dissenting.

The Court today stunningly grants state collateral relief from two death sentences based upon a Sixth Amendment claim of ineffective assistance of direct appeal counsel while completely ignoring the governing constitutional standard set forth by the United States Supreme Court.[1] Rather than following the two-part test for appellate counsel ineffectiveness reaffirmed in *Smith v. Robbins*, 528 U.S. 259, 285–89, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (applying *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)), the Court applies a *per se* test. I do not know how the Court would resolve the question of appellate counsel's stewardship if it applied the correct governing standard; but I do know that our duty under the United States Constitution, and our role *vis a vis* the United States Supreme Court where federal constitutional questions are involved, requires us to correctly *identify and attempt to apply* that standard. Because I do not believe that the Sixth Amendment means something different in Pennsylvania than it means in the rest of the Nation, I respectfully dissent.

1. Although the Concurring Opinion by Madame Justice Newman, which is joined by Mr. Justice Saylor, does not join the three-Justice plurality opinion, the concurrence agrees with the plurality in applying the same constitutionally erroneous, *per se* approach to the question of appellate counsel ineffectiveness. Thus, the concurrence acknowledges that appellant's argument as to direct appeal counsel's ineffectiveness consists of mere "boilerplate" and "tag lines," 809 A.2d at 335–36 & n. 2 (Newman, J., concurring), but agrees with the plurality that the mere generic allegation is enough to prove appellate counsel ineffective. Neither the plurality nor Madame Justice Newman's Concurrence deem an inquiry into appellate counsel's actual performance to be relevant or necessary to the question of his effectiveness. The failure of the Court even to account for the governing federal standard or at least to distinguish the applicable standards is, to say the least, distressing.

The Court holds that appellant's direct appeal counsel, who was other than his trial counsel, was *per se* ineffective under the Sixth Amendment because he allegedly failed to discover and pursue a non-record claim on that appeal which a majority of the Court, in hindsight, concludes would have had merit— specifically, a claim that trial counsel ineffectively represented appellant at the penalty phase of his capital trial. The Court's *per se* approach to the question of appellate counsel's steward-ship is contrary to governing United States Supreme Court authority. *See Robbins,* 528 U.S. at 289, 120 S.Ct. 746 (peti-tioner "must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel"); *Smith v. Murray,* 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Strickland, supra; Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). To properly understand the fundamental error in the Court's approach to the substantive federal claim of counsel ineffec-tiveness appellant raises on this appeal, familiarity with cer-tain procedural principles governing review of petitions for relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 *et seq.,* and certain undisputed facts in this case, is essential.

First, a Pennsylvania state prisoner is entitled to state collateral review and relief only insofar as the PCRA permits it, *e.g., Commonwealth v. Hall,* 565 Pa. 92, 771 A.2d 1232, 1235 (2001); and the PCRA dictates that a petitioner cannot pursue claims that are waived. 42 Pa.C.S. § 9543(a)(3). An issue is waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, *on appeal,* or in a prior state postconviction proceeding." 42 Pa.C.S. § 9544(b) (emphasis supplied).[2] *See Commonwealth v. Bracey,* 568 Pa. 264, 795 A.2d 935, 940 (2001) (claims that could have been raised on direct appeal but were not "are waived under the PCRA"); *Commonwealth v. (Michael) Pierce,* 567 Pa.186, 786 A.2d 203, 212 & n.6 (2001) (claims of

---

**2.** By order dated August 11, 1997, this Court suspended § 9544(b) insofar as it references "unitary review." That suspension is not pertinent here.

trial court error or ineffective assistance of trial counsel, which could have been raised on direct appeal by new counsel but were not, are waived under PCRA).

Second, in determining what issues "could have been raised" on direct appeal—and thus are waived under the PCRA—the Court must consider whether the petitioner was represented by trial counsel, or by new counsel, on that appeal. This is so because claims of counsel ineffectiveness in Pennsylvania " 'must be raised at the earliest stage in the proceedings at which the allegedly ineffective counsel is no longer representing the claimant.' " *Commonwealth v. Kenney*, 557 Pa. 195, 732 A.2d 1161, 1164 (1999), *quoting Commonwealth v. Griffin*, 537 Pa. 447, 644 A.2d 1167, 1170 (1994). *Accord Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (1998) ("It is well-established that a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant"); *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977). As a practical matter, under this Pennsylvania judicial rule, a criminal defendant represented by new counsel on direct appeal must raise claims of trial counsel ineffectiveness on that appeal or they will be defaulted, since new counsel's very presence means that the ineffectiveness claims, no less than claims of trial court error, will be waived under the PCRA. *(Michael) Pierce, supra; Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 526 (2001) ("those claims that were not raised at the earliest opportunity (on direct appeal) would be deemed waived" under § 9544(b)); *id.* at 534 (Castille, J., concurring); *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202, 204 (2000) (Nigro, J., concurring) (pursuant to § 9544(b), "Appellant has waived all of his ineffective assistance of trial counsel claims by failing to present them at his first opportunity to do so when his trial counsel no longer represented him, which was on his direct appeal to this Court").

Third, appellant here was represented by new counsel on his direct appeal. Indeed, that new counsel seized the opportunity to challenge trial counsel's stewardship. Specifically,

appellant claimed in his direct appeal that trial counsel was ineffective for failing to object to the prosecutor's allegedly inflammatory closing argument. This Court rejected the claim on the merits. *See Commonwealth v. Ford,* 539 Pa. 85, 650 A.2d 433, 442–43 (1994).

Fourth, since direct appeal counsel could have raised additional claims of trial court error or trial counsel ineffectiveness on that direct appeal, any claim that appellant now raises, which sounds in trial court error or trial counsel ineffectiveness, unquestionably is waived under the PCRA. On the other hand, claims sounding in the ineffectiveness of appellant's direct appeal counsel are not waived under the PCRA, since this PCRA proceeding represents appellant's "first opportunity to attack the stewardship of his prior appellate counsel." *Marrero,* 748 A.2d at 204 (Nigro, J., concurring). *See also (Michael) Pierce,* 786 A.2d at 212. Such constitutional claims are cognizable under the PCRA. *Id.* at 213, *citing* 42 Pa.C.S. § 9543(a)(2)(ii) (1988 version).[3] To prevail on a claim that counsel should have raised an issue on direct appeal, the PCRA specifically requires the petitioner to plead and prove that the failure to litigate the claim "could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(4). This requirement, of course, essentially tracks the *Strickland* test; thus, the Pennsylvania General Assembly has not approved the *per se* test invented by today's Court.

Fifth, notwithstanding the PCRA's explicit waiver provision, the counseled appellant here has elected to pose claims that sound almost entirely as waived issues of trial court error or trial counsel ineffectiveness. The only exceptions are appellant's procedural claim that the PCRA court erred in denying a discovery request (Claim XXI), and a single claim which, although it does not mention appellate counsel by name or role, nevertheless adverts to the ineffectiveness of "all prior

---

**3.** Although this PCRA petition, unlike the one in *(Michael) Pierce,* is governed by the 1995 amendments to the PCRA, § 9543(a)(2)(ii), which recognizes claims of counsel ineffectiveness, was unchanged by those amendments.

counsel" (Claim XIX). This global, so-called "layered" claim of counsel ineffectiveness, which appellant apparently intends to act to modify the claims he actually develops as waived claims of trial court error or trial counsel ineffectiveness, reads, *in its entirety*, as follows:

All prior counsels' failures to properly investigate and present each and all of the issues presented in Appellant's PCRA proceedings and in this appeal [sic] were ineffective. Each of these claims is of arguable merit; counsels' failures had no reasonable strategic basis; and the errors, individually and collectively, undermined confidence in the outcome of the trial and sentencing, establishing prejudice. Appellant is entitled to a new trial. *Commonwealth v. [Charles] Pierce*, 515 Pa. 153, 158–59, 527 A.2d 973, 975–76 (1987); *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Initial Brief of Appellant, 95. In addition, as the plurality and Madame Justice Newman's concurrence note, in appellant's argument on each of his claims he "tacks on a bald sentence" alleging that both trial and appellate counsel were ineffective for failing to pursue the waived claim of trial court error or trial counsel ineffectiveness that appellant actually develops. This is the extent to which appellant could be said to be raising claims sounding in the ineffective assistance of his appellate counsel.

Sixth, to the extent that appellant intends to pursue these non-waived claims of appellate counsel ineffectiveness, as opposed to waived claims of trial court error or trial counsel ineffectiveness, it is apparent that appellant intends those claims to sound coextensively under both the Federal and Pennsylvania Constitutions. Indeed, in Claim XIX, appellant cites to both *(Charles) Pierce* and *Strickland*. In *(Charles) Pierce*, this Court held that the federal *Strickland* test was also the proper test to evaluate ineffectiveness claims raised under the Pennsylvania Constitution. 527 A.2d at 976–77. *See also Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 332 (1999) (recognizing that test for counsel ineffectiveness under *Strickland* and *Pierce* is identical). The Third Circuit

has likewise recognized that Pennsylvania's standard for assessing claims of counsel ineffectiveness is materially identical to *Strickland*. *Werts v. Vaughn*, 228 F.3d 178, 203–04 (3d Cir.2000). Since the test for counsel ineffectiveness is the same under both charters, appellant's claims of appellate counsel ineffectiveness are governed by the Strickland/Pierce standard. Furthermore, it should be noted that, with respect to the claim upon which the Court awards relief, appellant's underlying argument concerning *trial counsel's* allegedly deficient performance is argued primarily as a matter of federal law, with heavy reliance upon federal authority.[4] In short, there is no question that the issue upon which the Court grants relief is a federal claim, which triggers an obligation on this Court to faithfully identify and apply governing federal law.

Seventh, with respect to the contours of the governing standard for Sixth Amendment claims of counsel effectiveness, the United States Supreme Court has recently reaffirmed that *Strickland* "announced a two-part test for evaluating claims that a defendant's counsel performed so incompetently in his or her representation of a defendant that the defendant's sentence or conviction should be reversed." *Bell v. Cone*, 535 U.S. 685, ——, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002).

We reasoned [in *Strickland*] that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," 466 U.S., at 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.*, at 694, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Without proof of both deficient performance and prejudice to the defense, we concluded, it

---

**4.** That appellant's claims sound primarily in federal law is unsurprising since he is represented in this state proceeding by federal capital habeas corpus counsel associated with the Defender Association of Philadelphia, who no doubt have their eye on federal review should appellant's quest for state collateral relief fail.

could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," *id.,* at 687, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and the sentence or conviction should stand.

*Id. Bell* also stressed, as *Strickland* had, that " '[j]udicial scrutiny of counsel's performance must be highly deferential' and that 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Id.* at 1852, quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

In analyzing claims of counsel ineffectiveness under Strickland/*Pierce* in Pennsylvania, "[t]his Court has come to characterize the test as a tripartite one, by dividing the performance element into two distinct parts, *i.e.,* arguable merit and lack of reasonable basis." *Commonwealth v. Lambert,* 568 Pa. 346, 797 A.2d 232, 243 n. 8 (2001) (Opinion Announcing Judgment of Court). Thus, in determining whether the defendant has successfully rebutted the constitutional presumption of attorney competence, courts in Pennsylvania applying the *Strickland* test look to whether: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel could not have had some objectively reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. *(Michael) Pierce,* 786 A.2d at 213; *Kimball,* 724 A.2d at 333. A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Lambert,* 797 A.2d at 241–43; *(Michael) Pierce,* 786 A.2d at 221–22; *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 701 (1998) ("If it is clear that Appellant has not demonstrated that counsel's act or omission adversely affected the outcome of the proceedings, the claim may be dismissed on that basis alone and the court need not first determine whether the first and second prongs have been met."). In short, "a court is not required to analyze the elements of an ineffectiveness claim in

any particular order of priority; instead, if a claim fails under any necessary element of the *Strickland* test, the court may proceed to that element first." *Lambert,* 797 A.2d at 243 n. 9, *citing Robbins,* 528 U.S. at 286 n. 14, 120 S.Ct. 746 and *Albrecht,* 720 A.2d at 701.

Eighth, and it is here that I fundamentally part ways with the Court, Sixth Amendment claims of appellate counsel ineffectiveness are no less subject to the constitutional *Strickland* test than are claims of trial counsel ineffectiveness. *Robbins,* 528 U.S. at 289, 120 S.Ct. 746; *(Michael) Pierce,* 786 A.2d at 213 (analyzing claims of appellate counsel ineffectiveness under settled *Pierce*/Strickland test); *Commonwealth v. Balodis,* 560 Pa. 567, 747 A.2d 341, 343 (2000) (plurality opinion by Cappy, J.) ("Application of the 'reasonable basis' test pertains to appellate advocacy as well as trial strategy"). Just last year, a majority of this Court purported to recognize this very point commanded by *Robbins*—i.e., that the *Strickland* test applies to claims that appellate counsel was ineffective. *Commonwealth v. Williams,* 566 Pa. 553, 782 A.2d 517, 525 (2001) ("PCRA counsel must, in pleadings and briefs, undertake to develop, to the extent possible, the nature of the claim asserted with respect to each individual facet of a layered ineffectiveness claim, *including that which relates to appellate counsel.*") (emphasis supplied). As Mr. Justice Cappy also recently noted:

> [I]t is essential to consider the independent actions of all prior counsel at each stage of the proceeding, as they relate to the current claim of error in the collateral proceeding. It is not enough for a petitioner to argue the merits of the underlying claim and the prejudice suffered. At the PCRA stage, a petitioner must go the next step and elucidate how the underlying claim of error was handled by, or overlooked by, each intervening attorney in order to present a cognizable claim for collateral relief.

*Lambert,* 797 A.2d at 248 n. 1 (Cappy, J., concurring).

Furthermore, the United States Supreme Court's governing decisional law in this area—which the plurality and the concurrences never acknowledge—recognizes that claims alleging

the incompetence of appellate counsel must account for "concerns unique to appellate practice." Thus,

> Arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief. *Jones v. Barnes,* 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "[A]ppellate counsel ... need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Robbins,* 528 U.S. at 288, 120 S.Ct. 746 (characterizing *Barnes*). "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), *quoting Barnes,* 463 U.S. at 751–52, 103 S.Ct. 3308. *See also Buehl v. Vaughn,* 166 F.3d 163, 174 (3d Cir.1999) ("One element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise.").

*Lambert,* 797 A.2d at 244. As a state court sitting in review of a federal constitutional claim, we have no power to ignore the governing federal standards as laid down by the High Court. The Court's failure today even to account for the governing standards is perplexing, at best, and distressingly hostile to federal law, at worst.

With these governing principles and the relevant facts in mind, I turn to the Court's analysis of the claim of appellate counsel ineffectiveness upon which it grants relief. The Court preliminarily finds that appellant's trial counsel was ineffective for failing to investigate and present sufficient evidence of mitigation at the penalty phase. For purposes of this dissent, I shall assume the correctness of that predicate finding. The Court's federal constitutional error occurs when it follows that preliminary finding with an *ipso jure* conclusion that appellate counsel was "ineffective for failing to raise trial counsel's ineffectiveness in this regard." I say *ipso jure* because the

quotation above, which the plurality states twice, 809 A.2d at 330, 334, comprises the entire sum and substance of the Court's analysis of appellate counsel's performance. The *per se* analysis in Madame Justice Newman's concurrence is no more illuminating. 809 A.2d at 336 (Newman, J., concurring).[5]

The Court's analysis of trial counsel's conduct, of course, is not the basis for its grant of state collateral relief for, as both the plurality and the concurrence recognize, that particular constitutional claim is waived under the PCRA. Instead, the finding respecting trial counsel is relevant only to the extent that it informs the Court's summary legal conclusion that appellant's counsel on direct appeal must have been ineffective for failing to uncover and present the claim respecting trial counsel. The Court's *per se* approach to the question of appellate counsel's constitutional competence is contrary to governing federal constitutional law, *Robbins, supra;* and, since the test under the Pennsylvania Constitution is coextensive, it is contrary to Pennsylvania constitutional law as well. *(Charles) Pierce, supra.* The Court's approach is also squarely contrary to the PCRA, which specifically adopted the *Strickland* standard, and requires the petitioner to plead and prove "[t]hat the failure to litigate the issue prior to or during trial ... or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel". 42 Pa.C.S. § 9543(a)(4).

The Court's failure to deem relevant and account for the *actual* performance of appellate counsel no doubt derives from the fact that appellant has never attempted, in the PCRA hearing below or in his brief on this appeal, to rebut the

**5.** The concurrence cites *dicta* from the *Williams* case to the effect that a "primary avenue" of proving appellate counsel's "lack of stewardship" is through establishing the merit of the foregone claims. *Id.,* citing *Williams,* 782 A.2d at 525 n. 5. The fact that a claim appears to have arguable merit in hindsight, however, says nothing about the objective reasonableness of appellate counsel's performance on appeal—which requires an assessment of the case from *appellate counsel's perspective.* This is especially so in a case, like this one, where the claim is a non-record one. In such an instance, we simply cannot pretend, as the plurality and concurrence do, that an inquiry into appellate counsel's actual performance is irrelevant.

constitutional presumption that appellate counsel was effective. In this regard, it is notable that, although appellant produced his trial counsel at the evidentiary hearing below, he did not call direct appeal counsel. Nor has there ever been any proffer from appellant as to what appellate counsel might say in response to the present accusation. The Court thus summarily grants relief upon a Sixth Amendment claim, and casually labels a member of the bar of this Court as a constitutionally incompetent appellate lawyer, despite having no factual record, or legal argument, that remotely accounts for the conduct of that lawyer, the only lawyer whose stewardship is subject to attack under the PCRA. The Court grants relief without displaying an awareness or concern for the actual federal constitutional value—competent appellate counsel—that is at stake. Thus, the Court makes no attempt to "reconstruct the circumstances" facing appellate counsel, or to "evaluate the conduct from counsel's perspective at the time." *Bell; Strickland.* Nor does the Court discuss the claims that counsel actually raised on appeal, much less explain why counsel was required to raise this claim in addition to, or instead of, the claims that were pursued. *See Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."), *quoted with approval in Robbins,* 528 U.S. at 288, 120 S.Ct. 746. These are not technical deficiencies; they go to the very heart of the Sixth Amendment matter, since the Court's *per se* standard effectively reverses the constitutional presumption that counsel was competent. The Court's *per se* holding deems it irrelevant to consider, for example, what kind of investigation appellate counsel actually undertook with respect to this extra-record claim, *i.e.,* whether he talked to his client, his client's family, and to trial counsel respecting foregone potential mitigation evidence; whether appellant and his family disclosed any helpful information in that regard; whether trial counsel admitted his own ineptitude then as willingly as he later admitted it at the PCRA hearing; and whether appellate counsel performed legal research on the issue and, if so, what he found. For all the Court knows,

appellate counsel's communications and interactions with his client and trial counsel gave counsel no reason to pursue an ineffectiveness claim premised upon a deficient preparation for the penalty phase. Or, for all the Court knows, direct appeal counsel may have perceived the claim but determined, in his professional judgment, that the claims he actually pursued on appeal—which the Court never discusses—offered a greater prospect for relief under the law in existence at that time. Contrary to the Court's erroneous view of the Sixth Amendment, appellate counsel is not automatically ineffective for failing to discover and pursue on appeal any and all possible claims—and especially non-record-based claims that depend critically upon admissions of incompetence from previous counsel.

To further complicate matters, as Madame Justice Newman's Concurring Opinion recognizes, the plurality does not even afford equal treatment to appellant's claims of appellate counsel ineffectiveness. Appellant does not merely seek a new penalty hearing, but also a new trial. To that end, he has raised numerous claims arising from alleged errors at the guilt phase of his trial. These claims, like the claim upon which the Court grants relief, are reviewable only as claims sounding in appellate counsel's ineffectiveness. Appellant's argument respecting appellate counsel as to these claims is the *very same* boilerplate argument that the Court deems sufficient to warrant a finding of *per se* ineffectiveness and penalty phase relief—*i.e.*, it is the single paragraph that comprises Argument XIX. As to appellant's guilt phase claims, however, the plurality would conclude that the boilerplate argument is insufficient *even to warrant merit review.* 809 A.2d at 329–30 n. 4.[6] And so, the very same, undeveloped argument is deemed by the plurality to be inadequate to trigger review of nineteen claims, but somehow adequate to warrant a *per se* finding of

6.  Although the plurality never uses the word "waiver," its finding in fact is a waiver finding, since it explicitly states that it is refusing to engage in a merit review of the claims of ineffectiveness. Its finding in this regard is in conflict with *Commonwealth v. Williams*, 566 Pa. 553, 782 A.2d 517, 525 (2001) and *Commonwealth v. Marrero*, 561 Pa. 100, 748 A.2d 202 (2000). *See Lambert*, 797 A.2d at 242–43 (discussing *Williams* and *Marrero*).

appellate counsel ineffectiveness in another instance. Thus, the plurality compounds the Court's fundamental error in wrongly thinking that there are different Sixth Amendment standards governing trial counsel and appellate counsel by concluding that, within the sub-class of claims involving appellate counsel, different standards apply depending upon one's opinion of how the issue was briefed. If there were no governing federal authority, I would not sign on to this tortured analysis. But, as is, the plurality's analysis and peculiar sub-analysis is squarely contrary to the uniform *Strickland* standard laid down by the United States Supreme Court—a standard the plurality never acknowledges.

I realize that this is a difficult case, and any jurist with a modicum of experience recognizes the wisdom in Justice Holmes' observation that "hard cases make bad law." *Northern Securities v. United States*, 193 U.S. 197, 400–01, 24 S.Ct. 436, 48 L.Ed. 679 (1904) (Holmes, J., dissenting). The Court is obviously and rightly concerned with trial counsel's disturbing testimony at the PCRA hearing below regarding mitigation investigation being a "blind spot" in his trial practice—testimony which I believe warrants a referral to the Disciplinary Board.[7] I therefore might understand if the Court determined that trial counsel's admission was so egregious that it would remand for a hearing respecting appellate counsel, notwithstanding appellant's failure to develop that claim here, even though such a holding would have to be explained and justified in light of our abrogation of the relaxed waiver rule on PCRA review in *Albrecht*.[8] Such is the course recom-

---

7. *See* Pa. R.P.C. 1.1 and comment. Rule 1.1 provides as follows:
   A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation necessary for the representation.

8. In his separate Concurring Opinion, Mr. Justice Saylor responds to this dissent by suggesting that this Court overrule our decisions holding that *Albrecht*, which enforced the PCRA waiver provision and abrogated the judicial relaxed waiver doctrine on PCRA review, should be applied to petitions pending when *Albrecht* was decided. The effect of recasting *Albrecht* as a purely prospective decision, and reinstituting relaxed waiver, would be to ignore that appellant's claim of trial counsel ineffectiveness is barred under the terms of the PCRA which, in turn,

mended by Mr. Justice Eakin in his separate dissent. Such a procedural holding, though inconsistent with current Pennsylvania law, at least would not offend the Federal Constitution.

would avoid the necessity of addressing whether appellate counsel was ineffective. In my Concurring Opinion in *Bracey*, I addressed at length why I believe that (1) *Albrecht* was correctly decided, as it merely enforced the PCRA's waiver provision which had been wrongly subverted by relaxed waiver, and (2) our decisions on the retroactivity of *Albrecht* were also correctly decided, in light of the actual purpose, scope and history of the doctrine. 795 A.2d at 951–57 (Castille, J., concurring). Justice Saylor does not dispute that, assuming that *Albrecht* applies to this appeal—which is what the plurality and the lead concurrence assume—the claim that appellate counsel was ineffective must be analyzed pursuant to the constitutional standard set forth in *Strickland* and *Robbins*. My disagreement with the plurality and the concurrences is that the claim here is not decided pursuant to the governing federal standard.

I add some additional comment respecting the relevance of the fact that some federal habeas courts have determined that the state procedural default resulting from our enforcing the PCRA waiver provision after *Albrecht* is not an adequate state procedural ground warranting deference on federal review. The federal habeas question of adequate state procedural grounds is distinct from the question of Pennsylvania law we faced in Albrecht, *i.e.*, whether to continue subverting a valid statutory default via a misplaced, discretionary judicial doctrine. A federal court looking at the adequacy of a state procedural default for habeas purposes is not concerned with whether the default is based upon a statute, rule, or case law, or even with whether the default has an unconstitutionally retroactive effect. Instead, the broader habeas inquiry is concerned with how settled and consistently applied the default was at the time the default occurred. In determining the distinct question of the propriety of relaxed waiver upon PCRA review, this Court could not overlook the fact that the default is statutory, and that any application of relaxed waiver which would defeat the statute was erroneous. Similarly, in later determining the question of retroactivity, we could not refuse to apply *Albrecht* without flouting the statutory provision.

Even aside from the fact that the inquiries facing this Court in *Albrecht* and *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293 (1999), required a different calculus than that employed by federal habeas courts examining the federal question of procedural default adequacy, I do not agree with the federal courts' assessment of the adequacy of *Albrecht* since I believe their conclusion is premised upon a mistakenly absolutist view of the scope of relaxed waiver. *See Bracey, supra* (Castille, J., concurring); *Williams*, 782 A.2d at 533 n. 1 (Castille, J., concurring). I am, of course, concerned with the views and opinions of our federal colleagues on questions of Pennsylvania state procedural law. However, I do not accept those views as controlling where, as in the case of relaxed waiver, I respectfully believe them to have misapprehended the scope of our doctrine.

But the Court goes much farther than resurrecting a flawed state procedural doctrine in devising a *per se* test to resolve the Sixth Amendment claim respecting appellate counsel here. The Court undertakes to "relax" the substantive federal standard by refusing to apply it. If there must inevitably be bad law resulting from this hard case, I would prefer that it be confined to a state procedural matter that we might attempt to explain or correct. On the substantive question here, however, the inescapable fact is that trial counsel's belated confession of ineptitude does not control the constitutional inquiry into the objective reasonableness of the appellate litigation decisions made by direct appeal counsel. The outright grant of penalty phase relief here is, in short, perplexingly erroneous under United States Supreme Court authority—authority the Court inexplicably fails even to acknowledge.

The United States Supreme Court's certiorari docket is sufficiently overburdened that it will likely prove unable to correct the very palpable failure of this Court to identify and apply the governing Sixth Amendment authority, and remand this case for actual consideration under the *Strickland* standard. I am left, then, to hope that, in the near future, this Court will correct, on its own accord, today's inexplicable failure to faithfully discharge our duty under the Federal Constitution. Because I would follow the governing constitutional authority in deciding the Sixth Amendment claim of appellate counsel ineffectiveness presented here, irrespective of my view concerning the underlying claim involving trial counsel, I respectfully dissent from today's grant of relief.

## DISSENTING OPINION

Justice EAKIN.

I agree with the analysis of Justice Castille, but write separately in order to summarize my position on the issue of "layered ineffectiveness" claims, hopefully without contributing more splinters to the fractured positions of this Court.

Failure to raise an issue at trial waives the right to raise that issue on appeal. If that failure is shown to constitute

ineffectiveness, waiver may be overcome; however, trial counsel's ineffectiveness must be proved, not merely alleged by boilerplate language. According to the statute, 42 Pa.C.S. § 9543(a)(4), one must "plead and prove" ineffectiveness, namely that counsel's decisions had no "rational, strategic or tactical" basis. This is also the test under 6th amendment caselaw. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984); *Commonwealth v. [Charles] Pierce*, 515 Pa. 153, 527 A.2d 973, 975–76 (1987).

If trial counsel's ineffectiveness is not raised on appeal, the right to complain about that ineffectiveness is also waived; this second waiver may also be overcome, but only if the second waiver is *proved* to be, not *assumed* to be, the result of ineffectiveness by appellate counsel. When we review trial counsel's actions, we are deferential, indeed highly deferential, to counsel's chosen course, and we (in theory) look at it without the wisdom of hindsight. *Bell v. Cone*, 535 U.S. 685, ——, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002). We understand strategic choices at time of trial do not comprise ineffectiveness merely because there was a guilty verdict— difficult choices must constantly be made during criminal representation. Is appellate representation to be given less careful review and consideration?

Lawyers handling an appeal make strategic decisions about the issues to raise, and the tack to take in addressing those issues. Their stewardship must be appraised with the same consideration given trial counsel. There is an allure to believing appellate counsel is ineffective *per se* simply because they did not advance an issue of trial's stewardship which is deemed unreasonable somewhere down the line. Like Rosie Ruiz taking the subway during the New York marathon, this belief allows a shortcut in violation of the rules of the matter. A paragraph simply alleging ineffectiveness of every attorney from the trial to date is not a subway ticket to the finish line. Without proof, it is not sufficient.

The doctrine of "relaxed waiver" was eliminated by *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693, 700 (1998). As Justice Saylor aptly notes, retroactive application of the

abolition of relaxed waiver puts those who litigated their petition before *Albrecht* at a disadvantage. These litigants did not prove ineffectiveness of appellate counsel, but under relaxed waiver concepts, they did not *have* to prove it. Thus, I would afford appellant the opportunity to prove the ineffectiveness of appellate counsel, and would remand for such purposes. If it is proved, a new penalty phase hearing is appropriate; if it is not, the judgment of sentence should stand.

For these reasons, I dissent from the analysis of my learned colleagues.