J-S13038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DERRICK GOINS | : | |
| Appellant | : | No. 1414 EDA 2025 |

Appeal from the PCRA Order Entered May 9, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0006411-2019

BEFORE:  PANELLA, P.J.E., NICHOLS, J., and KING, J.

MEMORANDUM BY KING, J.:                          **FILED JUNE 9, 2026**

Appellant, Derrick Goins, appeals *pro se* from the order entered in the Montgomery County Court of Common Pleas, denying his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On July 25, 2019, the Commonwealth filed a criminal complaint charging Appellant with first degree murder and criminal conspiracy in connection with the murder of Keith Robinson ("Victim").  The court scheduled a preliminary hearing on October 3, 2019.  At the beginning of the hearing, the court noted that Appellant's privately retained counsel sought a continuance of the preliminary hearing because she had a conflicting speaking engagement, and

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

the court denied the request.[2]  Nevertheless, Appellant's counsel did not appear at the preliminary hearing.  Appellant sought to continue the preliminary hearing, and the court denied the request.  As a result, Appellant proceeded *pro se* at the preliminary hearing.  All charges were held for court.

On December 9, 2019, the Montgomery County Public Defender's Office ("PD's Office") filed a motion asserting that Appellant initially tried to retain private counsel but had been unable to secure adequate funding.  The motion further stated that the PD's Office had a conflict of interest in representing Appellant and requested that the court appoint counsel for Appellant.  The court appointed Gregory DiPippo, Esquire, as counsel for Appellant.[3]

The Commonwealth also charged codefendants, Kyshan Brinkley and Jacquan Lee, in relation to the murder of Victim.  A joint jury trial commenced on January 3, 2022.  The PCRA court accurately summarized the evidence presented at trial as follows:

Following an eight-day jury trial, Appellant was found guilty

---

[2] There is no indication in the record that any attorney entered his or her appearance on Appellant's behalf prior to the preliminary hearing. Additionally, the record does not show that a defense motion for continuance was filed prior to the preliminary hearing.  Nevertheless, Appellant represents in his appellate brief that he had retained Sandra Thompson, Esquire, to represent him prior to the preliminary hearing.  Additionally, the court acknowledged on the record at the preliminary hearing that Appellant's counsel sought a continuance, which it denied.  (**See** N.T. Preliminary Hearing, 10/3/19, at 6-8).

[3] The court initially appointed different counsel who filed an omnibus pretrial motion on Appellant's behalf.  Shortly thereafter, the court appointed Attorney Dipippo, finding that Appellant's prior counsel had a conflict of interest.

of first-degree murder and criminal conspiracy. These convictions arose out of a conspiracy with codefendants, [Mr. Brinkley] and [Mr. Lee], to murder [Victim]. [V]ictim was a rival drug dealer to the home-grown Pottstown gang, Bud Gang Bitch ("BGB"). [Mr.] Brinkley and [Mr.] Lee were members of the BGB gang and Appellant was associated with the gang.

More specifically, on March 30, 2019, at about 10:53 p.m., [V]ictim's vehicle was sprayed with bullets, while [V]ictim was parked at the corner of York and Walnut Streets, Pottstown, Montgomery County. Two of the ten bullets hit [V]ictim and killed him. Appellant left the scene in a black van with [Mr.] Brinkley and [Mr.] Lee, and a few minutes later arrived at the 206 Manatawny Street apartment complex.

Specifically, as to Appellant's involvement, earlier in the evening of March 30, 2019, he was with [Mr.] Brinkley and [Mr.] Lee at a gathering. Several witnesses identified Appellant as being present at the Chestnut and Evans Streets gathering location. Witnesses observed Appellant leave that location with his codefendants and Elijah Davis … in a black van. A short time later, a black van was captured twice on surveillance in the vicinity of [V]ictim's car, circling [V]ictim's car. [Elias Scipio, a] witness who was in the area of the murder scene, just prior to the murder, observed Appellant pacing in an alleyway [near] the murder scene.

After the murder, Appellant was observed at 206 Manatawny Street apartment complex, the BGB gang trap house, along with his codefendants. Additionally, Appellant's cell phone records from the night of the murder show that the movements of his cell phone were consistent with those of [Mr.] Brinkley's cell phone, that put both in the area of the murder at the relevant time, traveling back to 206 Manatawny Street, then a short time later their cell phones traveled to a gas station, and then to the Uncut club in Philadelphia. Surveillance footage corroborates that a black van was at the murder scene, at 206 Manatawny Street, and at a nearby gas station at times that match up to the cell phone records. The surveillance at the gas station depicted Appellant exiting the black van. Finally, the evidence showed that Appellant had rented a black dodge

caravan minivan on March 29, 2019 and returned it April 2, 2019.

(PCRA Court Opinion, filed 7/29/25, at 1-3).

On January 13, 2022, the jury found Appellant guilty of first-degree murder and criminal conspiracy. That same day, the court sentenced Appellant to an aggregate sentence of life incarceration without parole. This Court affirmed Appellant's judgment of sentence on June 20, 2023, and our Supreme Court denied Appellant's petition for allowance of appeal on February 6, 2024. *See Commonwealth v. Goins*, No. 513 EDA 2022, unpublished memorandum (Pa.Super. filed June 20, 2023), *appeal denied*, ___ Pa. ___, 313 A.3d 143 (2024).

Appellant timely filed a *pro se* PCRA petition on November 13, 2024. Appellant asserted that trial counsel provided ineffective assistance by failing to investigate evidence that may have been beneficial to Appellant and failing to put forth evidence of Appellant's good character. Appellant further claimed that he was entitled to PCRA relief because he was denied his right to counsel of choice at his preliminary hearing. As well, Appellant asserted that the court violated his right to confront his accuser under the Sixth Amendment of the United States Constitution when it permitted a witness to testify regarding his non-testifying codefendant's confession. The court appointed Erin Lentz-McMahon, Esquire to represent Appellant. On February 27, 2025, Attorney Lentz-McMahon filed a petition to withdraw as counsel. Attorney Lentz-

- 4 -

McMahon also filed a 36-page ***Turner/Finley***[4] letter, which comprehensively reviewed each of Appellant's claims and concluded that they were of no merit.

On March 3, 2025, the court granted Attorney Lentz-McMahon's petition to withdraw and issued notice of intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. On May 1, 2025, Appellant filed a response to the court's Rule 907 notice, asserting that the issues he raised in his *pro se* PCRA petition were meritorious and that PCRA counsel was ineffective for failing to develop and amend his PCRA petition. The court formally dismissed Appellant's PCRA petition on May 9, 2025. On June 2, 2025, Appellant filed a timely notice of appeal. On June 4, 2025, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on June 23, 2025.

Appellant raises the following issues for our review:

> Did the PCRA court err in denying [Appellant's] PCRA petition holding that [Appellant's] ineffective assistance of counsel claim for failing to investigate lacked merit and PCRA counsel was ineffective for failing to investigate and develop this claim?

> Did the PCRA court err in denying [Appellant's] PCRA petition holding that [Appellant's] ineffective assistance of counsel claim for failing to present evidence of good character lacked merit and PCRA counsel was ineffective for failing to investigate and develop this issue?

> Did the PCRA [c]ourt err as a matter of law in denying

---

[4] ***Commonwealth v. Turner***, 518 Pa. 491, 544 A.2d 927 (1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

> [Appellant's] PCRA petition holding that his 6th Amendment counsel of choice claim is not a structural error and allowed counsel to withdraw?
>
> Did the PCRA [c]ourt err in denying [Appellant's] PCRA petition holding that [Appellant's] **Bruton**[5] claim lacked merit and PCRA counsel was ineffective for failing to develop and raise this claim?
>
> Did the PCRA Court err in granting PCRA counsel's motion to withdraw where her motion did not comport with the dictates of [**Turner**] and [**Finley**]?

(Appellant's Brief at 3-4) (reordered for purpose of disposition).

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Beatty**, 207 A.3d 957, 960-61 (Pa.Super. 2019), *appeal denied*, 655 Pa. 482, 218 A.3d 850 (2019). This Court grants great deference to the factual findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Howard**, 249 A.3d 1229 (Pa.Super. 2021). "[W]e review the court's legal conclusions *de novo*." **Commonwealth v. Prater**, 256 A.3d 1274, 1282 (Pa.Super. 2021).

Under the PCRA, a petitioner may be entitled to relief if his conviction or sentence resulted from, *inter alia*:

> (i) A violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of

---

[5] **Bruton v. United States**, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

- 6 -

guilt or innocence could have taken place.

(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

42 Pa.C.S.A. § 9543(a)(2)(i)-(ii). Further, to be eligible for PCRA relief, a petitioner must establish that the allegation of error has not been waived. *See* 42 Pa.C.S.A. 9543(a)(3). A claim is waived if a petitioner could have raised it on direct appeal but failed to do so. *See* 42 Pa.C.S.A. § 9544(b).

In his first issue, Appellant contends that his trial counsel was ineffective for failing to investigate potentially beneficial evidence for Appellant's case, and PCRA counsel was ineffective for failing to develop this claim in an amended PCRA petition. Specifically, Appellant asserts that trial counsel failed to follow up with Enterprise Rent-a-Car to acquire documentation of Appellant's history of renting vehicles from Enterprise. Appellant claims that had counsel done so, the records would have shown that Appellant had previously rented several vehicles from Enterprise. Appellant argues that these records would have established that Appellant had a history of renting vehicles "when he would make plans to go out to clubs, parties, or travel to neighboring cities, or just simply to drive around in the newest or latest cars available to rent." (Appellant's Brief at 27). Appellant maintains that such evidence would have created reasonable doubt as to whether Appellant rented the vehicle in question in this case for the sole purpose of murdering Victim.

Additionally, Appellant contends that trial counsel failed to follow up with Mr. Scipio's statement to law enforcement when he identified Appellant in a

photo array as the individual he saw in an alley near the murder scene. Specifically, Appellant claims that Mr. Scipio told law enforcement that he knew he saw Appellant in the alley at 10:18 p.m. because he sent a text to a friend at the time. Appellant asserts that trial counsel failed to investigate Mr. Scipio's phone records to confirm the timing of this text. Appellant argues the phone records would have supported Appellant's argument that he could not have been the individual Mr. Scipio saw in the alley because Appellant did not leave the Chestnut street gathering until around 10:30 p.m. Appellant further claims that the phone records "would have proved [Mr.] Scipio's testimony that it was 10:18 p.m. (not 10:34 [p.m.]) when he saw the individual in the alley way, and the Commonwealth would not have been able to explain away the time difference as a mere lapse in memory." (*Id.* at 29). Appellant concludes that the court erred in denying Appellant's ineffective assistance of counsel claim on these grounds, and this Court must grant relief. We disagree.

"Counsel is presumed to have rendered effective assistance." *Commonwealth v. Hopkins*, 231 A.3d 855, 871 (Pa.Super. 2020), *appeal denied*, 663 Pa. 418, 242 A.3d 908 (2020).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is

a reasonable probability that the outcome of the proceedings would have been different.

*Commonwealth v. Sandusky*, 203 A.3d 1033, 1043 (Pa.Super. 2019), *appeal denied*, 654 Pa. 568, 216 A.3d 1029 (2019) (internal citations and quotation marks omitted).

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit[.]" *Commonwealth v. Smith*, 167 A.3d 782, 788 (Pa.Super. 2017), *appeal denied*, 645 Pa. 175, 179 A.3d 6 (2018) (quoting *Commonwealth v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994)). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004) (quoting *Commonwealth v. Geathers*, 847 A.2d 730, 733 (Pa.Super. 2004)).

"Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests." *Commonwealth v. Kelley*, 136 A.3d 1007, 1012 (Pa.Super. 2016) (quoting *Pierce, supra* at 524, 645 A.2d at 194-95).

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

*Commonwealth v. King*, 259 A.3d 511, 520 (Pa.Super. 2021) (quoting *Sandusky, supra* at 1043-44).

"To show prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's allegedly unprofessional conduct, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Commonwealth v. Johnson*, 635 Pa. 665, 710, 139 A.3d 1257, 1284 (2016) (quoting *Commonwealth v. Baumhammers*, 625 Pa. 354, 383, 92 A.3d 708, 725 (2014)).

This Court has explained:

> A claim that trial counsel did not conduct an investigation or interview known witnesses presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation. It can be unreasonable *per se* to conduct no investigation into known witnesses. A showing of prejudice, however, is still required.

*Commonwealth v. Stewart*, 84 A.3d 701, 712 (Pa.Super. 2013) (internal citations omitted).

Instantly, the Commonwealth presented evidence that Appellant rented a van the day before Victim's murder and returned it a few days later. The Commonwealth further presented surveillance videos showing that the van Appellant rented was in close proximity to the crime scene at the time of the

murder.[6]    Additionally,  the  Commonwealth  presented  testimony  and  cell

phone records to demonstrate that Appellant was with the codefendants prior

to the murder, traveled to the murder scene at the relevant time with the

codefendants, and traveled together with the codefendants after the murder.

The Commonwealth further presented surveillance footage showing Appellant

exiting the van shortly after the murder at a gas station.

As such, even if counsel had investigated and presented evidence that

Appellant  previously  rented  vehicles  from  Enterprise  for  non-criminal

purposes, such evidence would not have negated the substantial evidence the

Commonwealth presented to show that the van Appellant rented on March 29,

2019  was  used  in  Victim's  murder.    Similarly,  even  if  trial  counsel  had

presented Mr. Scipio's phone records to discredit his testimony identifying

Appellant near the murder scene, the Commonwealth presented significant

independent evidence, including surveillance footage and phone records, to

establish that Appellant was with the codefendants at or near the murder

scene.    Therefore, the evidence that Appellant claims trial counsel failed to

investigate  and  present  would  have  been  insufficient  to  overcome  the

evidence the Commonwealth presented to establish that Appellant engaged in

_____

[6] The Commonwealth also presented testimony and surveillance footage that
an individual in a dark hooded sweatshirt was seen running to and from the
direction of the murder scene to the direction of the van.  Additionally, the
Commonwealth presented evidence that a black jacket was abandoned in a
trashcan near the murder scene shortly after gunshots were heard.  The DNA
profile from the jacket matched codefendant Lee's DNA.

a conspiracy with the codefendants to murder Victim and participated in Victim's murder. On this record, we cannot say that Appellant was prejudiced because of trial counsel's alleged failure to investigate and thus, his ineffective assistance of counsel claim must fail.[7] *See Sandusky, supra*; *Stewart, supra*. As Appellant has failed to establish that his underlying claim is meritorious, PCRA counsel cannot be held ineffective for failing to pursue a baseless claim. *See Poplawski, supra*. As such, Appellant is not entitled to relief on his first issue.

Regarding Appellant's remaining issues, after a thorough review of the record, the briefs of the parties, and the relevant law, we conclude that the PCRA court properly addressed and disposed of these claims in its opinion.

Specifically, regarding Appellant's second issue, the court determined that Appellant could not demonstrate prejudice because character testimony would have been insufficient to overcome the voluminous evidence from various reliable sources that the Commonwealth presented to establish

---

[7] The PCRA court misconstrued this issue as solely a claim that PCRA counsel failed to properly evaluate the issues raised in Appellant's PCRA petition. As a result, the court did not address Appellant's underlying claim regarding trial counsel's failure to investigate. Nevertheless, because the record is sufficient for this Court to determine that Appellant was not prejudiced as a result of his claim, we need not remand this matter to the PCRA court. *See Commonwealth v. Tedford*, 598 Pa. 639, 661, 960 A.2d 1, 13 (2008) (holding that remand is unnecessary where record demonstrates that ineffective assistance of counsel claim is deficient).

Appellant's guilt.[8]  (**See** PCRA Court Opinion at 6-9).

With respect to Appellant's third and fourth issues, preliminarily, we note that Appellant waived these issues by failing to raise them on direct appeal.  **See** 42 Pa.C.S.A. §§ 9543(a)(3); 9544(b).  **See also Commonwealth v. Ford**, 570 Pa. 378, 384, 809 A.2d 325, 329 (2002) (holding appellant waived PCRA claims of constitutional error where appellant could have raised claims during direct appeal but failed to do so).  To the extent Appellant is claiming that PCRA counsel was ineffective for failing to amend his petition to fashion these issues as claims of direct appeal counsel's ineffectiveness, the PCRA court concluded that the underlying issues lacked merit.

Regarding Appellant's third issue, the court found that a lack of representation at the preliminary hearing must result in specific prejudice to

_____

[8] The PCRA court further found that trial counsel had a reasonable basis for failing to put forth character witnesses in Appellant's defense because the Commonwealth could have introduced Appellant's juvenile adjudication of simple assault as impeachment evidence.  Nevertheless, the certified record does not include a record of Appellant's juvenile adjudication.  As such, it is unclear from the record when Appellant's juvenile adjudication occurred.  Further, in the **Turner/Finley** letter, PCRA counsel reported that trial counsel believed Appellant had a juvenile adjudication for criminal trespass, which Appellant refutes in his appellate brief.  On this record, we are unable to assess the court's reasonable basis analysis.  However, we agree with the PCRA court's prejudice analysis and thus, Appellant's claim fails even if the court's reasonable basis analysis was incorrect.

afford Appellant relief.[9] The court further determined that Appellant failed to establish prejudice because the Commonwealth did not solely rely on hearsay evidence at Appellant's preliminary hearing but presented the testimony of four law enforcement officers. The officers testified regarding their investigation, including their review of surveillance footage and cell phone data, which implicated Appellant in Victim's murder. As the Commonwealth presented sufficient evidence to establish a *prima facie* case, Appellant was not prejudiced as a result of being unrepresented at his preliminary hearing. (**See** PCRA Court Opinion at 9-12).

We additionally note that even if the evidence at Appellant's preliminary hearing was entirely based on hearsay, Appellant was subsequently brought to trial and convicted of those charges. As such, any defect in the preliminary hearing procedure was rendered immaterial by Appellant's subsequent trial

_____

[9] Appellant claims that the court erroneously evaluated his claim as a denial of his right to counsel when Appellant consistently asserted that he was denied his right to counsel of choice. Nevertheless, there is no support for Appellant's claim that the court interfered with Appellant's ability to choose his counsel. Rather, the record demonstrates that Appellant did not proceed with Attorney Thompson because he was unable to secure sufficient funds, not due to any action by the court. Additionally, Appellant did not seek a continuance prior to the preliminary hearing for additional time to secure counsel of his choice. Rather, Attorney Thompson sought a continuance due to a scheduling conflict, which the court denied. When Attorney Thompson failed to appear at the preliminary hearing, the court elected to proceed with the hearing without counsel present. On this record, the court properly evaluated Appellant's claim as a denial of his right to counsel.

and conviction.[10] *See Commonwealth v. Sanchez*, 623 Pa. 253, 322, 82 A.3d 943, 984 (2013) (concluding appellant was not entitled to relief when preliminary hearing was conducted without counsel due to counsel's failure to appear because defect was rendered immaterial by appellant's trial and conviction). *See also Commonwealth v. Starks*, No. 1218 MDA 2022, unpublished memorandum (Pa.Super. filed December 28, 2023) (holding appellant failed to establish prejudice where Commonwealth relied on hearsay evidence to establish *prima facie* evidence at preliminary hearing because defect was rendered immaterial by guilty verdict).[11]

Regarding Appellant's fourth issue, the PCRA court found that the testimony of a witness who testified regarding Appellant's non-testifying codefendant Brinkley's confession was properly redacted with neutral

_____

[10] Appellant further argues that he was prejudiced because the Commonwealth did not present Mr. Scipio at the preliminary hearing to identify Appellant in person. As a result, the first time Mr. Scipio had the opportunity to identify Appellant in person was at trial, at which point, Appellant looked objectively different than he did on the night of the murder. Appellant claims that the Commonwealth was therefore able to explain Mr. Scipio's failure to identify Appellant at trial based on Appellant's changed appearance. Initially, we note that Appellant's argument is based entirely on speculation that Mr. Scipio would not have been able to identify Appellant at the preliminary hearing. Additionally, as we have already discussed, even if Mr. Scipio's identification testimony had been entirely discredited, the Commonwealth presented significant independent evidence to establish that Appellant was at or near the crime scene at the relevant time with the codefendants. As such, Appellant's argument does not establish prejudice.

[11] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for persuasive value).

terminology such that Appellant was not implicated in the confession. The redaction, combined with the court's cautionary instruction to the jury, was sufficient to protect Appellant's Sixth Amendment right of confrontation. (**See** PCRA Court Opinion at 12-16). Thus, even if Appellant's third and fourth issues were not waived for purposes of the PCRA, we would rely on the rationale set forth in the PCRA court's opinion to conclude that they merited no relief.

Regarding Appellant's fifth issue, the court found that PCRA counsel satisfied the procedural requirements of **Turner/Finley** and filed a very thorough "no merit" letter which provided a detailed analysis of all the claims that Appellant wished to raise in his PCRA petition. As such, there is no merit to Appellant's claim that PCRA counsel provided ineffective assistance of counsel by failing to properly develop the claims Appellant raised. (**See id.** at 16-18).[12] The record supports the court's analysis. **See Beatty, supra**. Accordingly, we affirm based on the PCRA court's opinion.

Order affirmed.

_____

[12] Specifically, Appellant asserts that PCRA counsel failed to properly assess his claims that trial counsel was ineffective for failing to investigate and call character witnesses. As we have already discussed, Appellant cannot establish prejudice for these claims. As such, PCRA counsel cannot be found ineffective for declining to advance meritless claims. **See Poplawski, supra**.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/9/2026

**IN THE COURT OF COMMON PLEAS OF**
**MONTGOMERY COUNTY, PENNSYLVANIA**
**CRIMINAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA:         CP-46-CR-0006411-2019

V.         :

DERRICK GOINS         :         1414 EDA 2025

**1925(a) OPINION**

CARPENTER  J.         JULY 29, 2025

INTRODUCTION

Appellant, Derrick Goins, appeals from the final order of dismissal, entered on May 9, 2025, dismissing his petition seeking post-conviction relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. The PCRA petition was dismissed without a hearing after a review of PCRA counsel's no-merit letter, this Court's independent review of the record, and a review Appellant's response to Rule 907 notice.

On appeal, Appellant asserts that this Court erred in determining: trial counsel was not ineffective in failing to present evidence of his good character and that PCRA counsel was not ineffective in failing to investigate and develop this claim; that his 6th Amendment rights were not violated when he was not permitted counsel of his choice at his preliminary hearing; and that his Bruton[1] claim lacked merit. Additionally, Appellant asserts that PCRA

MontcoPA Clerk of Courts
JUL 29 '25 PM 12:09

---

[1]   Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)

counsel was ineffective under Turner/Finley[2] and that this Court erred in relying on PCRA counsel's no-merit letter in its Rule 907 pre-dismissal notice.

FACTUAL AND PROCEDURAL HISTORY

Following an eight-day jury trial, Appellant was found guilty of first-degree murder and criminal conspiracy. These convictions arose out of a conspiracy with co-defendants, Kyshan Brinkley ("Brinkley") and Jacquan Lee ("Lee"), to murder Keith Robinson. The victim was a rival drug dealer to the home-grown Pottstown gang, Bud Gang Bitch ("BGB"). Brinkley and Lee were members of the BGB gang and Appellant was associated with the gang.

More specifically, on March 30, 2019, at about 10:53 p.m., the victim's vehicle was sprayed with bullets, while the victim was parked at the corner of York and Walnut Streets, Pottstown, Montgomery County. Two of the ten bullets hit the victim and killed him. Appellant left the scene in a black van with Brinkley and Lee, and a few minutes later arrived at the 206 Manatawny Street apartment complex.

Specifically, as to Appellant's involvement, earlier in the evening of March 30, 2019, he was with Brinkley and Lee at a gathering. Several witnesses identified Appellant as being present at the Chestnut and Evans Streets gathering location. Witnesses observed Appellant leave that location with his co-defendants and Elijah Davis ("Davis") in a black van. A short time later, a black van was captured twice on surveillance in the vicinity of the

_____

[2] Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988); Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988).

2

victim's car, circling the victim's car. A witness who was in the area of the murder scene, just prior to the murder, observed Appellant pacing in an alleyway at the murder scene.

After the murder, Appellant was observed at 206 Manatawny Street apartment complex, the BGB gang trap house, along with his co-defendants. Additionally, Appellant's cell phone records from the night of the murder show that the movements of his cell phone were consistent with those of Brinkley's cell phone, that put both in the area of the murder at the relevant time, traveling back to 206 Manatawny Street, then a short time later their cell phones traveled to a gas station, and then to the Uncut club in Philadelphia. Surveillance footage corroborates that a black van was at the murder scene, at 206 Manatawny Street, and at a nearby gas station at times that match up to the cell phone records. The surveillance at the gas station depicted Appellant exiting the black van. Finally, the evidence showed that Appellant had rented a black dodge caravan minivan on March 29, 2019 and returned it April 2, 2019. With this evidence, *inter alia*, the jury convicted Appellant of conspiring with his co-defendants to murder the victim. For a full recitation of facts, see Exhibit "A," attached hereto, the "Facts and Procedural History" Section of this Court's direct appeal 1925(a) Opinion, at Superior Court docket 513 EDA 2022.

On June 20, 2023, the Pennsylvania Superior Court affirmed Appellant's judgment of sentence, and his petition for allowance of appeal was denied by the Pennsylvania Supreme Court on February 6, 2024.

3

Appellant filed his first *pro se* PCRA petition on November 13, 2024. PCRA counsel was appointed, and a no-merit letter was filed on February 27, 2025.

On March 3, 2025, this Court issued a Rule 907 pre-dismissal notice, notifying Appellant of this Court's intention of dismissing his PCRA petition for all of the reasons set forth by PCRA counsel in her no-merit letter, and of his right to respond to the notice. On March 21, 2025, Appellant requested additional time to file a Rule 907 response, which was granted. On May 2, 2025, a response was filed. After a review of the response, this Court issued the final order of dismissal on May 9, 2025. A timely notice of appeal followed.

## ISSUES

Appellant was directed to file a concise statement of errors complained of on appeal, and submitted the following issues set forth verbatim below:

1. Did the PCRA Court err[] in denying Goins' PCRA petition holding that Goins' Ineffective Assistance of Counsel claim for failing to present evidence of good character lacked merit?

2. Did the PCRA Court err[] in denying Goins' PCRA petition holding that Goins' Ineffective Assistance of Counsel claim for failing to investigate lacked merit and PCRA counsel was ineffective for failing to investigate and develop this claim?

3. Did the PCRA Court err[] as a matter of law·in denying Goins' PCRA petition holding that his 6th Amendment counsel of choice claim is not a structural error and allowed counsel to withdraw?

4

4. Did the PCRA Court err[] in denying Goins' PCRA petition holding that Goins' Bruton claim lacked merit?

5. Was PCRA counsel ineffective where she failed to investigate and develop Goins' meritorious claims with the level of zealousness required by Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988), and Commonwealth v. Finley, 550 A.2d 213 (Pa.Super. 1988)?

6. Did the PCRA Court err[] as a matter of law when it adopted PCRA counsel's no=merit letter without issuing its own opinion in either its 907 noticer or its order dismissing Goins' PCRA petition?

See, 1925(b) Statement, filed 6/23/25.

## DISCUSSION

"A review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." Commonwealth v. Mason, 130 A.3d 601, 617 (Pa. 2015) (quoting Commonwealth v. Hanible, 30 A.3d 426, 438 (Pa. 2011)). "[Our appellate court] grant[s] great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, no such deference is applied to its legal conclusions." Commonwealth v. Dozier, 208 A.3d 1101, 1103 (Pa.Super. 2019) (quoting Commonwealth v. Brenner, 147 A.3d 915, 919 (Pa.Super. 2016)). "[W]here the petitioner raises questions of law, our [appellate court's] standard of review is *de novo* and [its] scope of review is plenary." Commonwealth v. Pew, 189 A.3d 486, 488 (Pa.Super. 2018) (citation omitted). Finally, the appellate court "may affirm a PCRA court's decision on any

5

grounds if the record supports it." Commonwealth v. Smith, 194 A.3d 126, 132 (Pa.Super. 2018) (citation omitted).

Counsel is presumed to have rendered effective assistance. Commonwealth v. Bickerstaff, 204 A.3d 988, 992 (Pa.Super. 2019). To overcome this presumption, a petitioner must plead and prove, by a preponderance of the evidence that:

> (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice as a result of counsel's action or inaction. Commonwealth v. Pierce, 527 A.2d 973, 975–76 (Pa. 1987). If a petitioner fails to satisfy any of the three prongs of the ineffectiveness inquiry, his claim fails.

Commonwealth v. Brown, 196 A.3d 130, 150–51 (Pa. 2018). To establish the prejudice prong of the test, a PCRA petitioner "must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Commonwealth v. Johnson, 966 A.2d 523 (Pa. 2009).

I.      Ineffectiveness of Counsel Claim – Character Witnesses

First on appeal, Appellant contends that trial counsel was ineffective in not presenting character witnesses at trial. In Appellant's second enumerated claim, he asserts that PCRA counsel was ineffective in failing to properly investigate and develop this claim. However, Appellant is unable to establish that he was prejudiced by the failure to call character witnesses.

To establish that defense counsel was ineffective for failing to call witnesses, a petitioner must prove:

6

(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Commonwealth v. Puksar, 951 A.2d 267, 277 (Pa. 2008) (citation omitted). To establish prejudice that is so prejudicial as to deny a fair trial, the petitioner must "show that the witness's testimony would have been helpful to the defense." Commonwealth v. Sneed, 45 A.3d 1096, 1109 (Pa. 2012) (citing Commonwealth v. Auker, 681 A.2d 1305, 1319 (Pa.1996)). A witness's testimony is beneficial or helpful to the defense if "it would have created a reasonable probability of a different outcome at trial." Commonwealth v. Wantz, 84 A.3d 324, 333 (Pa.Super. 2014). Character evidence is substantive evidence sufficient to create reasonable doubt by itself. Commonwealth v. Johnson, 27 A.3d 244, 248 (Pa.Super. 2011).

In this case, Appellant is not entitled to PCRA relief on this claim because it was reasonable for trial counsel to forego producing character testimony on behalf of Appellant since his prior juvenile adjudication of simple assault could have been introduced to impeach any character witness who testified as to his reputation as a peaceful and non-violent person. See, Commonwealth v. Judd, A.2d 1224, 1232–1233 (Pa.Super. 2006)(appellant's convictions for simple assault, reckless endangerment, and driving under the influence would be admissible and if appellant "presented character evidence to establish that he was a non-violent person, the Commonwealth would be allowed to present evidence of his more recent prior convictions").

7

In addition, Appellant cannot prove he was prejudiced by the absence of character testimony at trial. Although character testimony is theoretically sufficient by itself to create reasonable doubt, it is rarely sufficient in practice. See e.g., Commonwealth v. Cull, 688 A.2d 1191, 1197 (Pa.Super.1997). In this case, the Commonwealth presented voluminous evidence of Appellant's guilt. There was eyewitness testimony that put him at the crime scene at the time of the murder, there was evidence he rented the vehicle used in the perpetration of the murder, and that the vehicle was captured on surveillance at the location of the murder at the time of the murder. Additionally, there was cell phone evidence that his cell phone was present at the crime scene at the relevant time. Further, there was evidence that tied him to the conspiracy with Brinkley and Lee, *inter alia*, the three of them were seen together before the murder, directly after the murder, and later on that night at the Uncut club. Cell phone evidence showed that Appellant's phone traveled with Brinkley's phone that night. All three were seen in the black van that was associated with the murder. Appellant cannot demonstrate that there exists a reasonable probability that the outcome would have been different if counsel had called character witnesses considering the evidence of guilt presented at trial. Therefore, his PCRA ineffectiveness claim does not entitle him to post-conviction relief.

In Appellant's Rule 907 Response, he suggests that like the defendant's claim that counsel was ineffective in failing to call character witnesses in Commonwealth v. Weiss, 606 A.2d 439, 442 (Pa. 1992), which was

8

found to have merit, he too suffered prejudice. However, the facts of <u>Weiss</u> are readily distinguishable from the facts of this case. The <u>Weiss</u> Court held that, "[i]n a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility." <u>Id.</u> at 442. As cited above, there was significant amount of evidence from many sources that established Appellant's guilt. This is not like the facts of <u>Weiss</u> and does not substantiate Appellant's claim of prejudice.

## II.    Choice of Counsel at Preliminary Hearing

In Appellant's third issue on appeal, he contends that he was denied his Sixth Amendment right to counsel at his preliminary hearing. More specifically, in his memo attached to his *pro se* PCRA petition, he claimed that this is a structural error, not subject to a prejudice analysis. In addition, he argues that even if he was required to show prejudice, prejudice resulted because the Commonwealth presented its *prima facie* case, relying solely on hearsay testimony. Additionally, he was unable to confront Elias Scipio, who had identified him in a photo lineup as the person he saw in an alley at the murder scene, at the time of the murder, but did not testify at the hearing.

Appellant's claim lacks merit. The underlying claim is subject to a prejudice analysis and Appellant cannot show he was prejudiced. This claim does not merit PCRA relief.

A preliminary hearing is a "critical stage" of a criminal proceeding, at which a defendant is entitled to the assistance of effective counsel.

9

Commonwealth v. Carver, 436 A.2d 1209, 1211 (Pa.Super.1981)) (although defendant was blatantly denied his right to counsel at preliminary hearing where in-court identifications were made, and same eyewitnesses later identified defendant at trial, denial of counsel at the preliminary hearing did not constitute reversible error, because defendant could not show that representation at preliminary hearing would have changed the outcome") (citing, Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); Commonwealth v. Rines, 372 A.2d 901 (Pa.Super. 1977))). However, lack of representation at a preliminary hearing must result in specific prejudice to a defendant and is subject to the harmless error test. . Commonwealth v. Sawyer, 357 A.2d 587 (Pa.Super. 1976); Commonwealth v. Redshaw, 323 A.2d 92, 93 (Pa.Super. 1974). "If Appellant suffers no prejudice, he is entitled to no remedy." Rines, 372 A.2d at 903 (citation omitted).

Contrary to Appellant's assertion, the failure to be represented at a preliminary hearing is not a structural error; rather, specific prejudice must be shown. In this case, Appellant was not prejudiced. As to the claim that the Commonwealth relied primarily on hearsay evidence, this was raised by counsel in a Supplemental Omnibus Pretrial Motion, filed on October 14, 2020, asserting in part, a *habeas corpus* claim. A pre-trial motion hearing was held on July 27, 2021 addressing this issue. At the hearing, this Court considered the notes of testimony from the preliminary hearing and supplemental evidence and on August 2, 2021, this Court denied his writ of *habeas corpus.*

10

At the preliminary hearing, the Commonwealth did not rely solely on hearsay evidence as stated by Appellant. Rather, at the preliminary hearing the Commonwealth presented four witnesses, Pottstown Police Officer Eric Weber, Montgomery County Detective M. Robert Turner, Detective Heather Long, and Detective Todd Richard. Officer Weber was the responding officer and Detective Tuner responded to the scene and collected evidence. (N.T., Preliminary Hearing, 10/3/19, pp. 9 – 11, 28 – 39). Detective Long testified about the BGB gang, and identified Brinkley and Lee, among others, as members of the gang. Id. at 58, 62, 64). Detective Richard testified in relevant part about the surveillance of the murder scene, which showed a person dressed in all black and a covered face walk towards the victim's car just out of view and then ran back from the direction the person came from. Id. at 80- 81. Another video was obtained with the audio of ten gunshots having been fired. Id. at 82.

Detective Mitchell testified to surveillance that depicted a few minutes before the murder, a black minivan in the area of the victim's car. Id. at 83. He had determined in his investigation that Appellant rented a black Dodge Caravan from Enterprise Rent-A-Car on March 29th, a day before the murder. Id. at 83 – 84. Detective Mitchell interviewed several witnesses who identified Lee as the driver of the black minivan on March 30, 2019. Id. 86 – 87. Surveillance footage from after the murder at a gas station showed Lee as the driver of the black minivan and Appellant was also captured on video at the gas station. Id. at 86-87, 91. Appellant was depicted getting into the front

11

passenger seat. Id. at 92. Detective Mitchell identified Appellant as wearing all black in surveillance footage at the gas station, which matched the description of the shooter. Id. at 92, 122.

Detective Mitchell also interviewed Elias Scipio who was in the alley near the murder scene and identified Appellant from a line up as the person he saw in the alley. Id. at 93 – 94. Appellant cross-examined Detective Mitchell about this identification evidence. Id. at 163. Further, the detective testified as to cell phone evidence, which put Appellant's phone in the vicinity of the murder. Id. at 104 – 105.

Therefore, had Appellant been represented by counsel at the preliminary hearing it is doubtful that the magisterial judge would have agreed that the Commonwealth presented solely hearsay evidence. The testimony of Detective Mitchell was all firsthand knowledge of a review of the surveillance video evidence and of his analysis of cell phone records

III.   Bruton Claim

Appellant next contends that the determination that his Bruton claim lacked merit was erroneous. However, a review of this claim, reveals that there Appellant's right to confront witness, Elijah Williams, was not violated.

Appellant set forth in his supporting memorandum of his *pro se* PCRA petition that his confrontation rights were violated when jailhouse informant, Elijah Williams, testified to a confession made by Appellant's non-testifying co-defendant Brinkley to Williams.

12

The Confrontation Clause of the Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The right of confrontation includes the right to cross-examine witnesses. Richardson v. Marsh, 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).

In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the United States Supreme Court held that a defendant's Confrontation Clause rights are violated when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at a joint trial, even when accompanied by a jury instruction that the confession may be considered only against the co-defendant. The high Court explained:

> there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect .... The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed.

391 U.S. at 135-36, 88 S.Ct. 1620 (citations and footnotes omitted).

13

Nevertheless, redaction is "an appropriate method of protecting defendant's rights under the Bruton decision." Commonwealth v. Rainey, 928 A.2d 215, 227 (Pa. 2007) (citation omitted). Discussing the High Court decision in Richardson, our Supreme Court explained:

> Therein, the Court held that the "Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when ... the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Consistent with the High Court's pronouncement and our own line of cases, we have held that substituting the neutral phrase "the guy" or "the other guy" for the defendant's name is an appropriate redaction.

Commonwealth v. Cannon, 22 A.3d 210, 218 (Pa. 2011) (citations omitted).

Prior to trial, trial counsel filed a motion to sever which, in part, on November 29, 2021, counsel argued that a severance was warranted because Williams would be testifying about Brinkley's confession, and that Appellant would not be able to cross-examine Brinkley. (N.T., Pretrial Motions Hearing, 11/29/21, pp. 35 – 36). Counsel asserted that this violated his right to confront a witness under Bruton. Id. at 36. At the conclusion of the hearing, this Court denied severance, stating, "I believe that the Commonwealth can properly redact or instruct the witness to avoid mentioning the other defendants in conformity with Bruton, and the requirements of Bruton and its progeny." Id. at 60.

At trial, Elijah Williams, an inmate of Bucks County Correctional Facility at the time of trial, testified to his jailhouse conversation with Brinkley,

14

when they both were incarcerated in Montgomery County Correctional Facility. (N.T., Trial by Jury – Day 6 of 8, 1/11/22, pp. 118 – 130). In short, according to Williams, Brinkley confessed to the murder and provided the motive for the murder. In Williams' testimony, he told the jury what Brinkley had told him about the murder, and in relevant part he stated:

> So pretty much him and **his friends** were in a van and they drove past where the dude was and **they seen** him sitting in the car. So he said that **they went** and parked the van somewhere away from cameras because he knows Pottstown and pretty much knows where the cameras are. So **they went** and parked the van. He said he had to pretty much walk. So he said he got like the things that he needed from **the people that was with him**, like whatever, the strap or whatever the case may be.

Id. at 123. In discussing what Brinkley told him about the motive behind the killing, Williams testified:

> So then he told me, like, that particular -- that was like his case, like it was a old guy. He said the dude was 20 years older than him, like 40-something and he was still out there hustling. He said his time was up. He had to get -- like, pretty much **him and his team**, you know what I'm saying, was taking over with the business and that guy was in the way.

Id. at 126.

> Yeah, yeah, yeah. Yeah. He was like -- it was like the guy was taking -- he said he ain't going to let -- well, how did he put it --- old dudes eating while he's starving or something crazy like that. So, yeah, **they was hustling**. Everybody was. He pretty much wanted the guy out of the way for that purpose.

Id. at 127. In questioning the witness about whether Brinkley mentioned anything about cell phones, Williams explained:

15

> Yeah. He said he had a cell phone, but he also told me that he had -- he said there's two cell phone towers in Pottstown. So he basically said that **they deleted** their phones in a different car or something to that nature so they wouldn't ping off, something like that. And how anybody knows there's two cell phone towers is beyond me, but something to that effect.

Id. at 128.

In addition, prior to Williams' testimony, this Court provided cautionary instructions to the jury, in parting, instruction, "if you find his testimony to be credible, worthy of belief, may only be used against Defendant Brinkley. It may not in any way be used against any other defendant." Id. at 117.

Williams' testimony was properly redacted, and in no way named Goins as a participant in conformance with Cannon, supra. This redaction along with the cautionary instructions protected Appellant's confrontations rights. Accordingly, there was not Bruton violation and Appellant is not entitled to relief on this basis.

IV.    Ineffectiveness of Counsel Claim – PCRA Counsel

Appellant contends that PCRA counsel was ineffective in failing to investigate and develop his claims with the "level of zealousness" required by Turner/Finley.

Petitioners "have a general rule-based right to the assistance of counsel for their first PCRA Petition." Commonwealth v. Cherry, 155 A.3d 1080, 1082 (Pa.Super. 2017); Pa.R.Crim.P. 904(C). Once counsel is appointed, counsel must either amend the petitioner's *pro se* petition or certify that the

16

claims lack merit by complying with the mandates of Turner/Finley. Cherry, 155 A.3d at 1083. "The Turner/Finley decisions provide the manner for post-conviction counsel to withdraw from representation." Commonwealth v. Rykard, 55 A.3d 1177, 1184 (Pa.Super. 2012), abrogated on other grounds by Commonwealth v. Bradley, 261 A.3d 381, 397 (Pa. 2021).

The holdings of the Turner/Finley line of cases "mandate an independent review of the record by competent counsel before a PCRA court or appellate court can authorize an attorney's withdrawal." Id. A Turner/Finley brief must detail the nature and extent of counsel's review, list each issue the petitioner wishes to have reviewed, and provide an explanation of why the petitioner's issues are meritless. Commonwealth v. Widgins, 29 A.3d 816, 818 (Pa.Super. 2011). If counsel satisfies the procedural requirements of Turner/Finley, the court must conduct its own review of the merits of the case. Commonwealth v. Wrecks, 931 A.2d 717, 721 (Pa.Super. 2007). If the court agrees with counsel that the claims are without merit, the court will allow counsel to withdraw and deny relief. Id. Finally, Pennsylvania law "forbids appointment of new counsel where a proper Turner/Finley no-merit letter has been accepted and counsel was permitted to withdraw." Commonwealth v. Williams, 204 A.3d 489, 493 (Pa.Super. 2019) (citation and footnote omitted). Instead, a petitioner must use their own resources to retain counsel or proceed *pro se.* Id.

In this case, PCRA counsel complied with the dictates of Turner/Finley, provided effective assistance, and provided a zealous

17

representation. PCRA counsel filed a very thorough and complete no-merit letter. She detailed all of the claims Appellant wished to raise, and provided a very detailed analysis of each claim, citing case law and applying that to the fact of this case. Appellant seems to be unsatisfied that PCRA counsel's finding no merit to his claims, and this boilerplate assertion of ineffectiveness does not provide Appellant relief. Commonwealth v. Gibson, 318 A.3d 927, 934 (Pa. Super. 2024) (noting that boilerplate allegations and bald assertions "cannot satisfy a petitioner's burden to prove that counsel was ineffective").

V.     Sufficiency of Rule 907 Notice

In Appellant's last issue on appeal, he claims that this Court erred in adopting PCRA counsel's no merit letter in its Rule 907 notice and not providing its own rationale in the notice or in the order dismissing his PCRA petition.

Pennsylvania Rule of Criminal Procedure 907 provides, in pertinent part, as follows:

> the judge shall promptly review the [PCRA] petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to postconviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that the proceedings continue.

18

Pa.R.Crim.P. 907(1).

In this Court's Rule 907 notice, this Court stated it reviewed PCRA counsel's no merit letter, that it made an independent review of the record, and stated that for the reasons set forth in counsel's no-merit letter, this Court found that Appellant did not raise meritorious issues. The purpose of Rule 907 notice is to provide petitioner with opportunity to seek leave to amend petition and correct material defects therein. Commonwealth v. Vo, 235 A.3d 365, 372 (Pa. Super. 2020). The response to a Rule 907 notice is an opportunity for a petitioner and/or his counsel to object to the dismissal and alert the PCRA court of a perceived error, permitting the court to discern the potential for amendment. The response is not itself a petition and the law still requires leave of court to submit an amended petition. Commonwealth v. Rykard, 55 A.3d 1177, 1189 (Pa. Super. 2012) (citations and quotations marks omitted).

In this case, Appellant's response to the Rule 907 notice establishes that he was adequately informed for the reasons underlying the Rule 907 notice. Appellant provided argument in support of the claim that he was denied counsel at his preliminary hearing, and provided several pages of argument in support of his claim. See, Response to the Court's 907 Notice of Intent to Dismiss PCRA, filed 5/1/25, pp 2 – 6. Appellant reiterated his Bruton claim and provided argument. Id. at 12 – 15. Further, Appellant addressed his ineffectiveness claim regarding character witnesses and provided additional argument in support of his claim. Id. at 15 – 21. Appellant provided this detailed response to both the Rule 907 notice and counsel's no-merit letter.

19

Despite the fact that the Rule 907 notice was not expansive in its explanation, it provided the necessary components required by the Rule and that Appellant was not prejudiced by any purported defects in the Rule 907 notice. Therefore, this claim does not provide relief.

## CONCLUSION

Based upon the foregoing analysis, the final order of dismissal entered on May 9, 2025 should be affirmed.

BY THE COURT

_____
WILLIAM R. CARPENTER                    J.
COURT OF COMMON PLEAS
MONTGOMERY COUNTY
PENNSYLVANIA
38TH JUDICIAL DISTRICT

**Copies sent on July 29, 2025**
**By Electronic Mail to:**
Robert Falin, Esquire, Deputy District Attorney, Chief of Appellate Division;
Robert.Falin@montgomerycountypa.gov
Denise S. Vicario, Esquire, Executive Director; opinions@montgomerybar.org

**Copies sent on July 29, 2025**
**By First Class Mail to:**
Derrick Goins *pro se* #QN7308
SCI Fayette
50 Overlook Drive
Labelle, PA 15450

_____
Judicial Assistant